# EXHIBIT 1

# [Promissory Note dated May 3, 2010]

## PROMISSORY NOTE

US $540,000.00

San Jose, California<br>May 3, 2010

FOR VALUE RECEIVED, the undersigned, HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company ("Maker"), promises to pay to the order of KENNETH Y. KAI and TAE K. KAI, Trustees, of the Kai Family 1998 Trust dated October 5, 1998 ("Holder"), the principal sum of FIVE HUNDRED FORTY THOUSAND AND NO/100 DOLLARS (US $540,000.00 with interest thereon from May 3, 2010, computed on the principal balance from time to time outstanding at the applicable interest rate determined as set forth below.

**Interest.** The interest payable under this Note shall be at the rate of FIVE PERCENT (5.00%) per annum, compounded annually. Interest shall be calculated on the basis of a three hundred sixty-five (365) day year for actual days elapsed.

**Payments; Maturity Date.** Maker is not required to make payments of principal or interest until the Maturity Date. All principal outstanding under this Note, any accrued unpaid interest, and all fees, charges and other sums payable to the Holder shall be due and payable on May 2, 2013 (the "Maturity Date"), unless sooner due as provided in this Note. A balloon payment described below will be due on the Maturity Date.

**Balloon Payment.** A single payment, called a "balloon payment", equal to the unpaid part of the principal plus any interest and other charges then due, must be paid by Maker on the Maturity Date.

**Application of Payments.** All payments on this Note shall be made at P. O. Box 3136, San Jose, California 95156, or to such other place as the holder of this Note may designate from time to time. All payments on this Note shall be payable only in lawful money of the United States of America. Except in the case of an election to the contrary by Holder in the event of a default, and to the extent permitted by law, all payments will be applied first to charges, then to interest, and then to principal.

**Prepayments.** The Maker shall have the privilege of making prepayments on the accrued interest and/or the principal balance outstanding under this Note, on any date without a prepayment penalty.

**Default; Acceleration.** If the Maker shall default in the payment of principal, interest or other fees or charges when due under this Note, or if the Maker shall default in the performance of or compliance with any term, covenant, condition or provision required to be performed or complied with by the Maker under that certain Real Property Mortgage executed by Maker and Holder concurrently herewith or security instrument referred to therein (such other agreements or instruments being hereinafter called the "Loan Documents") and such default shall not have been remedied during the period the Maker is required to remedy such default, then, and in any such event, the Holder shall have the option to declare the unpaid principal sum of this Note

Promissory Note<br>Page 1 of 4

Exhibit 1

Kai Decl. Exhibit P. 2

together with all charges and interest accrued thereon to be immediately due and payable, and such principal sum, charges, and interest shall thereupon become and be due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived. Notwithstanding anything to the contrary herein, upon any default by Maker, Holder shall provide to Maker a notice of such default and Maker shall have thirty (30) days from such notice to cure such default.

**Attorneys' Fees**. The Maker promises to pay the Holder's reasonable attorneys' fees and such expenses as are incurred to induce or compel the payment of this Note or any portion of the indebtedness evidenced hereby, whether suit is brought hereon or not.

**Waiver**. Except as otherwise provided herein, the Maker, endorsers and guarantors hereof and all others who may become liable for any part of this obligation severally waive presentment, protest, demand and notice of protest, demand, dishonor and nonpayment of this Note and consent to any number of renewals or extensions of the time of payment hereof and to any release of parties obligated hereunder or forbearance in the enforcement hereof.

**No Oral Waiver, Modification or Cancellation**. No provision in this Note may be waived, modified or cancelled orally, but only by an agreement in writing and signed by the party against whom enforcement of any waiver, modification, discharge or cancellation is sought.

**Governing Law**. This Note shall be governed by and construed according to the laws of the State of Hawaii.

**Limitations on Interest**. Notwithstanding any provision to the contrary contained in the Loan Documents, the rate and amount of interest which the Maker shall be required to pay to the Holder shall in no event, contingency or circumstance exceed the maximum rate or amount limitation, if any, imposed by applicable law. If, from any circumstance whatsoever, performance by the Maker of any obligation under the Loan Documents at the time performance shall be due (including, without limiting the generality of the foregoing, the payment of any fee, charge or expense paid or incurred by the Maker which shall be held to be interest), shall involve transcending the limits of validity prescribed by law, if any, then, automatically, such obligation to be performed shall be reduced to the limit of such validity prescribed by applicable law. If, notwithstanding the foregoing limitations, any excess interest shall at the maturity of the Note be determined to have been received, the same shall be deemed to have been held as additional security. The foregoing provisions shall never be superseded or waived and shall control every other provision of all agreements between the Holder and the Maker.

**Notices**. Any notice which a party is required or may desire to give the other under this Note or the Loan Documents shall be in writing and shall be sent by (a) personal delivery, (b) mail (either (i) by United States registered or certified mail, return receipt requested, postage prepaid, or (ii) by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery), (c) facsimile transmission with telephonic confirmation of receipt, or (d) e-mail with telephonic confirmation of receipt, addressed in the applicable manner as

ImanageDB:1327306.4

Kai Decl. Exhibit P. 3

described below (subject to the right of a party to designate a different address for itself by notice similarly given).

To Holder:      KENNETH Y. KAI and TAE K. KAI, Trustees, of
the Kai Family 1998 Trust dated October 5, 1998
P.O. Box 3136
San Jose, CA 95156

To Maker:      HAWAII RIVERBEND, LLC
Attn: Michael Miroyan
P.O. Box 3181
Saratoga, CA 95070

Any notice so given by mail, facsimile transmission, or e-mail shall be deemed to have been given as of the date of delivery (whether accepted or refused) established by U.S. Post Office return receipt, the overnight carrier's proof of delivery, or telephonic confirmation of receipt as the case may be. Any such notice given in any other manner shall be deemed given upon actual receipt of the same by the party to whom the same is to be given. Any party may give notice by more than one method described in this section.

**Parties in Interest.** The Holder shall have the right to assign the Holder's interest in this Note to any subsequent Holder or Holders of this Note. The Maker shall not assign the Maker's interest in this Note without the prior written consent of the Holder. All of the terms and provisions of this Note shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective personal representatives, heirs, successors and assigns, whether or not hereinabove so expressed. The use of any gender shall include all genders.

**Severability.** If any provision of this Note shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof.

**Paragraph Headings.** The headings of the paragraphs herein are for convenience and reference only and shall not be considered as defining or limiting in any way the scope or intent of any provision of this Note.

[Signature appears on next page.]

ImanageDB:1327306.4

Kai Decl. Exhibit P. 4

IN WITNESS WHEREOF, Maker has caused this Note to be duly executed.

MAKER:

HAWAIIAN RIVERBEND, LLC, a Hawaii limited
liability company

4/29/10

By _____
Mishael Miroyan
Its Manager

Promissory Note
Page 4 of 4

ImanageDB:1327306.4

EXHIBIT 2

[Real Property Mortgage, dated April 28, 2010]



I hereby certify that this is
a true copy from the records
of the Bureau of Conveyances.

*Nicki Ann Thompson*
Registrar of Conveyances
Assistant Registrar, Land Court
State of Hawaii



R-322    STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
MAY 07, 2010    08:01 AM
Doc No(s) 2010-062606

/s/ NICKI ANN THOMPSON
REGISTRAR

20    3/4    Z2

---

Return by Mail (X) Pickup ( ) To:
Cades Schutte LLP
1000 Bishop St., Suite 1200
Honolulu, HI 96813
Attn: W. Shultz, Esq.

Tax Map Key No.: (3) 6-8-002-021

TG: 200953762 P

TGE: A9-305-1292

LNK    Lynne Oonkerbrook

Total No. of Pages: 18

P/9-3

---

## REAL PROPERTY MORTGAGE

THIS REAL PROPERTY MORTGAGE (this "**Mortgage**") is made on 4-28, 2010, by **HAWAIIAN RIVERBEND, LLC**, a Hawaii limited liability company, whose address is P.O. Box 3181, Saratoga, California 95070 (the "**Mortgagor**"), to **KENNETH Y. KAI** and **TAE K. KAI**, Trustees, of the Kai Family 1998 Trust dated October 5, 1998, whose address is P.O. Box 3136, San Jose, California 95156 (the "**Mortgagee**"),

### WITNESSETH THAT:

In consideration of the sum of **FIVE HUNDRED FORTY THOUSAND AND NO/100 DOLLARS (US $540,000.00)** (the "**Loan**"), now owing by the Mortgagor to the Mortgagee, to secure the payment thereof, together with interest thereon, according to the provisions of that certain promissory note executed concurrently herewith by the Mortgagor, as maker, and made payable to the Mortgagee, the provisions of such note and any renewals, extensions or modifications thereof being incorporated herein by reference, being secured hereby and being hereinafter referred to as the "**Note**";

AND ALSO to secure the observance and performance by the Mortgagor of all covenants, conditions and agreements required to be observed and performed by the Mortgagor under this Mortgage and under any other instruments or agreements executed by the Mortgagor concurrently herewith, including, but not limited to, the payment by the Mortgagor to the Mortgagee of all sums expended or advanced by the Mortgagee pursuant to any provision of this Mortgage or any such other instrument or agreement (the Note and this Mortgage being hereinafter called the "**Loan**

ImanageDB:1319379.3

Exhibit 2

Documents");

THE MORTGAGOR DOES HEREBY grant, bargain, sell, assign and convey unto the Mortgagee, its successors and assigns, all of that certain property described in <u>Exhibit "A"</u> attached hereto and made a part hereof, subject to the encumbrances (the "**Encumbrances**"), if any, set forth in such Exhibit.

TOGETHER WITH all buildings and improvements now located on the real property described above and any and all buildings, improvements and building materials that may be placed thereon during the existence of this Mortgage and all rents, royalties, profits, revenues, income and other benefits arising from the use or enjoyment of all or any portion of such property or any contract pertaining to the use or enjoyment thereof;

ALSO TOGETHER with all furniture, furnishings, machinery, appliances, apparatus, equipment, inventory, fittings, fixtures and articles of personal property of every kind and nature whatsoever, other than consumable goods, now or hereafter located in or upon such real property or any part thereof (hereinafter called "**Equipment**") and now owned or hereafter acquired by the Mortgagor, it being understood and agreed that all of the Equipment is part and parcel of the improvements on such real property and appropriated to the use thereof, and whether affixed or annexed or not, shall for the purpose of this Mortgage be deemed conclusively to be real estate and conveyed hereby, the Mortgagor agreeing to execute and deliver, from time to time, such further instruments as may be requested by the Mortgagee to confirm the lien of this Mortgage on the Equipment;

ALSO TOGETHER with any and all awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to such real property and improvements as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to or decrease in the value of such real property to the extent of all amounts which may be secured by this Mortgage at the date of receipt of any such award or payment by the Mortgagee, and of the reasonable counsel fees, costs and disbursements incurred by the Mortgagee in connection with the collection of such award or payment, the Mortgagor agreeing to execute and deliver, from time to time, such further instruments as may be required by the Mortgagee to confirm such assignment to the Mortgagee of any such award or payment;

ALSO TOGETHER with all right, title and interest of the Mortgagor in and to (1) all leases, partial assignments, subleases and other contracts of conveyance covering all or any portion of such real property or the Equipment, and any and all modifications and extensions thereof; and (2) all binders or policies of insurance of any kind covering all or any portion of such real property or the Equipment, and any riders, amendments, extensions, renewals, supplements or revisions thereof (the items of collateral described in this paragraph being hereinafter called the "**Collateral**");

TO HAVE AND TO HOLD the above-described real property, Equipment, Collateral, awards, payments and other property together with all rights, privileges and appurtenances thereto belonging (all of such property being hereinafter referred to as the "**Mortgaged Property**") unto

the Mortgagee, absolutely and forever; SUBJECT, HOWEVER, to the Encumbrances.

UPON CONDITION that if the Mortgagor shall well and truly pay to the Mortgagee the principal amount of the Note, with interest, fees, charges and premium, if any, according to its provisions and effect, and if the Mortgagor shall observe and perform all of the covenants, conditions and agreements to be observed and performed by the Mortgagor in this Mortgage and the other Loan Documents, and if the Mortgagor shall pay the costs of release, then these presents shall be void, and that, subject to the terms hereof, until the happening of an Event of Default, as hereinafter defined, the Mortgagor shall be permitted to use and possess the Mortgaged Property and to use and receive the rents, issues, profits, revenues and other income thereof;

BUT, if any one or more of the following events ("**Events of Default**") shall occur:

(a)    Default shall be made by the Mortgagor in the payment of principal, interest, fees or charges when due on the Note or any other obligation secured hereby; or

(b)    Default shall be made by the Mortgagor in the due and punctual observance or performance of any other covenant, condition or agreement required to be observed or performed by the Mortgagor under this Mortgage or the Note or under any of the other Loan Documents and such default shall not have been remedied within ninety (90) days after notice of the occurrence of the default; or

(c)    The Mortgagor shall become insolvent or shall be voluntarily or involuntarily dissolved or shall admit in writing the Mortgagor's inability to meet the Mortgagor's debts as they become due, or the Mortgagor shall file a voluntary petition in bankruptcy, or make an assignment for the benefit of creditors, or consent to the appointment of a receiver or trustee for all or a substantial part of the Mortgagor's properties, or file a petition, answer or other instrument seeking or acquiescing to the arrangement of the Mortgagor's debts, or other relief under the federal bankruptcy laws or any other applicable law for the relief of debtors of the United States of America or any state or territory thereof; or

(d)    A decree or order of a court having jurisdiction in the premises shall be entered (i) adjudging the Mortgagor to be bankrupt or insolvent, or (ii) appointing a receiver or trustee or assignee in bankruptcy or insolvency of the Mortgagor or the Mortgagor's properties, or (iii) directing the winding up or liquidation of the Mortgagor's affairs;

Notwithstanding anything to the contrary herein, upon any default by Mortgagor, Mortgagee shall provide to Mortgagor a notice of such default and Mortgagor shall have thirty (30) days from such notice to cure such default, including, but not limited to any of the events described in subsections (a) through (d) above.

THEN, AND IN ANY SUCH EVENT:

(a)    The Mortgagee may, without notice, presentment or demand, declare the unpaid principal amount of the Note to be immediately due and payable, and such principal amount shall

thereupon become and be immediately due and payable, and shall thereafter bear interest until fully paid at the rate specified in the Note;

(b)     The Mortgagor, upon demand of the Mortgagee, shall forthwith surrender to the Mortgagee the actual possession of the Mortgaged Property and, to the extent permitted by law, the Mortgagee itself or such officers or agents as it may appoint: (i) may enter and take possession of the Mortgaged Property, together with the books, papers and accounts of the Mortgagor relating thereto; (ii) may exclude the Mortgagor, and the Mortgagor's agents and servants therefrom; (iii) may hold, operate and manage the same and from time to time make all needful repairs and such alterations, additions, advances and improvements as the Mortgagee shall deem appropriate; and (iv) may receive tolls, rents, revenues, issues, income, product and profits thereof and out of the same may pay all proper costs and expenses of so taking, holding and managing the same, including reasonable compensation to the Mortgagee's agents, attorneys and counsel, and any taxes and assessments and other charges prior to the lien of this Mortgage, which the Mortgagee shall deem necessary or desirable to pay, and all expenses of such repairs, alterations, additions and improvements, and other disbursements made by the Mortgagee pursuant to the terms hereof, and may apply the remainder of the monies so received by the Mortgagee to the payment of any sums secured hereby, including but not limited to, the unpaid principal of, and interest on, the Note;

(c)     The Mortgagee may, to the extent permitted by law, with or without first taking possession, sell the Mortgaged Property, in whole or, to the extent permitted by law, in part, at public auction in the State of Hawaii, or at such place as may be required by law, having first given notice of such sale by publication as may be required by law, and may adjourn such sale from time to time by announcement at the time and place appointed for such sale or adjourned sale, and upon such sale, the Mortgagee may make and deliver to any purchaser a good and sufficient deed, conveyance, or bill of sale, and good and sufficient receipts for the purchase money, and do and perform all other acts as may be necessary fully to carry into effect this power of sale;

(d)     The Mortgagee may, either with or without first taking possession, proceed by action or actions at law or in equity, or by any other appropriate remedy, to enforce payment of the Note or performance of any other obligation secured hereby, and to foreclose this Mortgage, and to sell, in whole, or to the extent permitted by law, in part, the Mortgaged Property under the judgment or decree of a court or courts of competent jurisdiction;

(e)     Upon the institution of judicial proceedings to enforce its rights hereunder, the Mortgagee, to the extent permitted by law, shall be entitled as a matter of right to the ex parte appointment (without bond) of a receiver or receivers of the Mortgaged Property, and of the tolls, rents, revenues, issues, income, product and profits thereof, pending such proceedings, with such powers as the court making such appointment shall confer; and

(f)     The Mortgagee shall have the right to enforce one or more remedies hereunder, or any other remedy the Mortgagee may have under the other Loan Documents, successively or concurrently, including, but not limited to, the right to foreclose this Mortgage with respect to any portion of the Mortgaged Property, if the operation of the remaining portion thereof is not thereby rendered unlawful under the then applicable laws, rules and regulations of the governmental authorities having jurisdiction in the premises, without thereby impairing the lien of this Mortgage

Kai Decl. Exhibit P. 10

on the remainder of the Mortgaged Property or affecting the remedies of the Mortgagee available with respect thereto.

Upon any sale, either under the power of sale hereby given or under judgment or decree in any judicial proceedings for foreclosure, or otherwise for enforcement of this Mortgage, the unpaid principal amount of the Note, any unpaid interest thereon, and all other obligations hereby secured, if not previously due, shall at once become and be immediately due and payable.

Upon any such sale, the Mortgagee may bid for and purchase the Mortgaged Property or any part thereof, and, upon compliance with the terms of sale, may hold, retain and possess and dispose of such property in its absolute right without further accountability, and the Mortgagee, at any such sale may, if permitted by law, after allowing for the proportion of the total purchase price required to be paid in cash for the costs and expenses of the sale, commissioner's compensation and other charges, in paying purchase money, turn in the Note, including any interest thereon, in lieu of cash, up to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon. The Mortgagee shall be permitted to bid at any public auction held to sell the Mortgaged Property without payment of a deposit or down payment of any kind. The Mortgagee shall not be required at confirmation of any public auction sale to extend credit or financing of any kind to the Mortgagor or any other party that may acquire the Mortgaged Property.

The Mortgagee may apply the proceeds of any such sale, first, to the costs and expenses of such sale and all proceedings in connection therewith, including, but not limited to, counsel fees, next, to the payment of any unreimbursed disbursements made by the Mortgagee for taxes or assessments or other charges prior to the lien of this Mortgage; next, to the payment of all other unreimbursed disbursements and expenses and unpaid charges and fees due and owing to the Mortgagee under the provisions of this Mortgage or any of the other Loan Documents; and next, to the payment of the unpaid principal sum of and interest on the Note and all other obligations of the Mortgagor to the Mortgagee, in such order as the Mortgagee shall determine; and the remainder, if any, shall be paid over to the Mortgagor. If such proceeds shall be insufficient to discharge the entire indebtedness under the Loan Documents, the Mortgagee may have any other legal recourse against the Mortgagor for the deficiency.

Any such sale shall, to the extent permitted by law, be a perpetual bar, both at law and in equity, against the Mortgagor and all persons and corporations lawfully claiming by or through or under the Mortgagor; and the Mortgagee is hereby irrevocably appointed the true and lawful attorney of the Mortgagor, in the Mortgagor's name and stead, for the purpose of effectuating any such sale, to execute and deliver all necessary deeds, conveyances, assignments, bills of sale and other instruments with power to substitute one or more persons or corporations with like power; provided, that the Mortgagor shall ratify and confirm any such sale or transfer if required by the Mortgagee by delivering all proper conveyances or other instruments to such persons or corporations as may be designated in any such request.

In case of any Event of Default, neither the Mortgagor nor anyone claiming by, through or under the Mortgagor, to the extent the Mortgagor may lawfully so agree, shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension or redemption laws now or hereafter in force in any locality where any of the Mortgaged Property is situated, in order to

Kai Decl. Exhibit P. 11

prevent or hinder the enforcement or foreclosure of this Mortgage, or the absolute sale of the Mortgaged Property, or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat; and the Mortgagor, for the Mortgagor and all who may claim under the Mortgagor, hereby waives, to the full extent that the Mortgagor may lawfully so do, the benefit of all such laws, and any and all right to have the estate comprised in the security intended to be created hereby marshalled upon any foreclosure of the lien hereof and agrees that the Mortgagee or any court having jurisdiction to foreclose such lien may sell the Mortgaged Property as an entirety.

In case the Mortgagee shall have proceeded to enforce any right hereunder and such proceedings shall have been discontinued or abandoned for any reason, then in every such case, the Mortgagor and the Mortgagee shall be restored to their former positions and rights hereunder with respect to the Mortgaged Property, and all rights, remedies and powers of the Mortgagee shall continue as if no such proceedings had been taken. No remedy herein reserved to the Mortgagee is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity, or by statute.

Nothing in this Mortgage, the Note or any of the other Loan Documents shall affect or impair the right, which is unconditional and absolute, of the holder of the Note to enforce payment of the principal, interest and other charges on the Note when the same shall become due, or the obligation of the Mortgagor, which is likewise unconditional and absolute, to pay such amounts at the respective times and places therein expressed.

A.  _Mortgagor's Warranty_. The Mortgagor hereby warrants and represents that: (1) the Mortgagor is the owner in fee simple of the Mortgaged Property and has good right to grant and convey the same as aforesaid; (2) such property is free from all encumbrances and liens, except for the Encumbrances, if any; and (3) the Mortgagor will WARRANT AND DEFEND the same unto the Mortgagee forever against the lawful claims and demands of all persons, except for the Encumbrances, if any.

B.  _Mortgagor's Covenants_. The Mortgagor hereby covenants and agrees with the Mortgagee as follows:

1.  _Payment of Secured Obligations_. The Mortgagor will pay to the holder of the Note the principal and interest due thereunder, and all fees, charges and other sums payable under the Loan Documents, all according to the provisions thereof, and will also pay and discharge any and all obligations that are now or hereafter may be or become owing by the Mortgagor to the Mortgagee under the Loan Documents and on any and every other account, together with interest, fees, charges and other sums payable thereon as may be specified with respect thereto.

2.  _Payment of Real Property Taxes, Assessments, etc._ The Mortgagor will punctually pay and discharge, or cause to be paid and discharged, from time to time as the same shall become due, all real property taxes, rates, assessments, impositions, duties, water rates, sewer rates and other charges of every description to which the Mortgaged Property, or any part thereof, or any improvements thereon, may during the term of this Mortgage become liable by authority of law,

Kai Decl. Exhibit P. 12

the payment of which shall be secured by this Mortgage; PROVIDED, HOWEVER, that real property taxes may be paid in semiannual installments and improvement or betterment assessments may be paid in annual installments, upon condition that, in each case, the same are not allowed to become delinquent, and that the Mortgagor will, upon request, deposit a copy of the receipts therefor with the Mortgagee not later than the final date such taxes, assessments and charges may be paid without penalty.

3. <u>Observance of Laws</u>. The Mortgagor will duly observe and conform to all laws, rules and regulations made by any governmental authority, and all valid requirements of any regulatory body which may acquire jurisdiction, which apply or relate to any of the Mortgaged Property.

4. <u>Maintenance and Inspection</u>. The Mortgagor will keep and maintain all buildings, structures and improvements now located or hereafter constructed on the Mortgaged Property in good repair, working order and condition, and will permit the Mortgagee and any persons authorized by the Mortgagee to enter and inspect the Mortgaged Property at all reasonable times.

5. <u>Waste, Unlawful Use, etc</u>. The Mortgagor will not commit or suffer any strip or waste, or unlawful, improper or offensive use of the Mortgaged Property, or any act or negligence whereby such property or any interest therein shall become liable to seizure or attachment or mesne or final process of law or whereby the lien provided hereby shall be impaired.

6. <u>Sale, Transfer, Lease, etc</u>. The Mortgagor will not sell (including by agreement of sale), convey, assign, transfer or lease the Mortgaged Property or any interest therein while this Mortgage remains in effect.

7. <u>Liens</u>. The Mortgagor will not create, suffer to be created or permit to remain upon the Mortgaged Property or any part thereof, or the income therefrom, any mechanics', materialmen's, laborers', tax, statutory or other involuntary lien or charge, except the Encumbrances, and liens of taxes and assessments not yet payable or payable without penalty so long as payable; provided, that nothing contained in this paragraph shall be deemed to require the Mortgagor to pay or cause to be paid, any tax, assessment or charge, or to satisfy any involuntary lien, so long as the Mortgagor in good faith by appropriate action diligently pursued shall contest, or cause to be contested, the validity thereof (provided the security afforded by this Mortgage shall not thereby be subjected to any sale, forfeiture or loss, or reasonable probability thereof).

8. <u>Insurance</u>. The Mortgagor will, during the term of this Mortgage, at the Mortgagor's sole cost and expense and for the mutual benefit of the Mortgagor and the Mortgagee maintain public liability insurance and property damage insurance against claims for personal injury or death or property damage suffered by others occurring upon, in or about any Mortgaged Property, or upon, in or about the adjoining streets and passageways thereof.

9. <u>Condemnation</u>. If the Mortgaged Property or any part thereof shall be condemned, the Mortgagee may appear and defend any such suit and is hereby irrevocably authorized to collect all of the proceeds and apply the same upon any obligation secured hereby.

Kai Decl. Exhibit P. 13

10. _Notice of Deposit of Insurance or Condemnation Proceeds_. The Mortgagor will, in case any proceeds of insurance upon the Mortgaged Property or any part thereof, or the proceeds of any award for the taking in eminent domain of the Mortgaged Property or any part thereof, are deposited with any person other than the Mortgagee, promptly notify the Mortgagee in writing of the name and address of the person with whom such proceeds have been deposited and the amount so deposited.

11. _Application of Payments_. The Mortgagee shall have the right and is hereby expressly authorized to apply any payments received and any rents, issues and profits collected to the payment of any indebtedness of the Mortgagor to the Mortgagee hereby secured in any order which the Mortgagee may determine, and any such application shall in all respects be binding upon the Mortgagor.

12. _Possession by Mortgagor after Sale_. In the event of a sale of the Mortgaged Property, or any part or parts thereof, under and by virtue of the provisions of this Mortgage, the purchaser or purchasers thereof shall have immediate and peaceable possession of the same, and if the Mortgagor shall remain in possession after the effective date of such sale, such possession shall be construed as a tenancy at sufferance only, giving unto the purchaser all remedies, by way of summary possession or otherwise, conferred by law in such case.

13. _Acknowledgment of Mortgage Debt_. Within five (5) days after request by the Mortgagee in writing, the Mortgagor will furnish to the Mortgagee or to any proposed assignee of this Mortgage a written statement, duly acknowledged, of the amount due on this Mortgage and whether any offsets, counterclaims or defenses exist against the mortgaged debt.

14. _Further Instruments_. The Mortgagor, upon reasonable request of the Mortgagee, will execute and deliver such further instruments and do such further acts as may be necessary or proper to carry out more effectively the purpose of this Mortgage and to subject the Mortgaged Property to the lien hereof, and any renewals, additions, substitutions, replacements or betterments thereto.

15. _Right of Mortgagee to Prevent or Remedy Default_. If the Mortgagor shall fail to observe or perform any of the terms, covenants and conditions required to be observed and performed by the Mortgagor under this Mortgage, unless the Mortgagor shall be engaged in good faith by appropriate action diligently pursued in contesting or causing to be contested the existence of such default and the security afforded by this Mortgage shall not thereby be subjected to any sale, forfeiture or loss, or reasonable probability thereof, the Mortgagee may (but shall not be obligated to): (i) take any action the Mortgagee deems necessary or desirable to prevent or remedy any such default by the Mortgagor, or to otherwise protect the security of this Mortgage, and (ii) enter in and upon the Mortgaged Property or any part thereof to such extent and as often as the Mortgagee, in its sole discretion, deems necessary or desirable in order to prevent or to remedy any such default by the Mortgagor or otherwise to protect the security of this Mortgage, and the Mortgagee may pay and advance for the account of the Mortgagor such sums of money as the Mortgagee, in its sole discretion, deems necessary for any such purpose.

Kai Decl. Exhibit P. 14

16.    <u>Right of Mortgagee to Defend Action Affecting Security</u>.  The Mortgagee may appear in and defend any action or proceeding at law or in equity purporting to affect the security of this Mortgage.

17.    <u>Right of Mortgagee to Extend Time of Payment, Substitute, Release Security, etc</u>. Without affecting the liability of any person, including the Mortgagor, for the payment of any indebtedness secured hereby, or the lien of this Mortgage on the Mortgaged Property (or the remainder thereof), for the full amount of any indebtedness unpaid, the Mortgagee may from time to time, without notice and without affecting or impairing any of its rights under this Mortgage: (a) release any person liable for the payment of any of the indebtedness; (b) extend the time or otherwise alter the terms of payment of any of the indebtedness or accept a renewal note or notes to evidence such an extension or alteration; (c) accept additional security therefor of any kind, including (but not limited to) deeds of trust, mortgages and security agreements; (d) alter, substitute or release any property securing the indebtedness; (e) resort for the payment of the indebtedness secured hereby to any securities therefor in such order and manner as it may see fit; (f) join in granting any easement or creating any restriction thereon; and (g) join in any extension or subordination or other agreement affecting this Mortgage or the lien or charge thereof.

18.    <u>Mortgagee's Expenses for Protection of Security</u>.  All advances, costs, expenses and attorneys' fees which the Mortgagee may make, pay or incur under any provision of this Mortgage for the protection of the security of the Mortgagee, or any of the rights of the Mortgagee in connection with the Mortgaged Property, or in foreclosure proceedings commenced and subsequently abandoned, or in any dispute or litigation in which the Mortgagee or the holder of the Note may become involved by reason of or arising out of this Mortgage or the other Loan Documents, shall be paid by the Mortgagor to the Mortgagee, upon demand, and shall bear interest until paid at the rate specified in the Note.

19.    <u>Partial Releases</u>.  The Mortgagee may release any portion of the Mortgaged Property without, as to the remainder of the Mortgaged Property, in any way impairing or affecting the lien, security interest and priorities herein provided for the Mortgagee compared to any subordinate lien holder.

20.    <u>Loss, Destruction, etc. of the Note</u>.  The Mortgagor will, in the event the Note shall be mutilated, destroyed, lost or stolen, deliver to the Mortgagee, in substitution therefor, a new Note containing the same terms and conditions as the old Note with a notation thereon of the unpaid principal and any accrued unpaid interest.  The Mortgagor shall be furnished with satisfactory evidence of the mutilation, destruction, loss or theft of the Note and also such security or indemnity as may be reasonably requested by the Mortgagor; PROVIDED, HOWEVER, that if the original Mortgagee named herein is then the Mortgagee under this Mortgage, an unqualified indemnity from the original Mortgagee named herein shall be deemed to be satisfactory security for indemnification.

C.    <u>MISCELLANEOUS PROVISIONS</u>:

1.    <u>No Waiver</u>.  Any failure by the Mortgagee to insist upon the strict performance by the Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any

Kai Decl. Exhibit P. 15

of the terms and provisions hereof, and the Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by the Mortgagor of any and all of the terms and provisions of this Mortgage to be performed by the Mortgagor.

2.      Security Agreement and Financing Statement Under Uniform Commercial Code. This Mortgage shall constitute a security agreement and financing statement under the Uniform Commercial Code, as enacted in Hawaii; and the Mortgagor, as debtor, hereby grants to the Mortgagee, as secured party, a security interest in any or all of the Equipment, in addition to a Mortgage lien upon the same as part of the realty. The Mortgagor will assist in the preparation of and execute from time to time, alone or with the Mortgagee, and deliver, file and record any financing or continuation statements, mortgages or other instruments, and do such further acts as the Mortgagee may request to establish, maintain and perfect the security interests of the Mortgagee in the Mortgaged Property, including (but not limited to) the Equipment, and all renewals, additions, substitutions, improvements to the same and the proceeds thereof, and otherwise to protect the same against the rights and interests of third parties. The terms of this Mortgage shall be deemed commercially reasonable within the meaning of the Uniform Commercial Code.

3.      Partial Release following Subdivision. Mortgagee understands that Mortgagor intends to subdivide the Mortgaged Property and to thereafter convey an approximately ten (10) acre portion of the Mortgaged Property ("10 Acre Parcel") to the County of Hawaii. In order to facilitate the conveyance of the 10 Acre Parcel to the County of Hawaii, following subdivision and prior to such conveyance, Mortgagee is prepared to execute and deliver an instrument releasing the 10 Acre Parcel from the Mortgaged Property. Mortgagee is willing to issue such release upon the request of Mortgagor and at no cost to Mortgagor, provided, however, the costs of preparing and recording such release instrument shall be shared equally between Mortgagor and Mortgagee.

4.      Definitions. The terms "advances," "costs" and "expenses" shall include, but shall not be limited to, reasonable attorneys' fees whenever incurred. The terms "indebtedness" and "obligations" shall mean and include, but shall not be limited to, all claims, demands, obligations and liabilities whatsoever, however arising, whether owing by the Mortgagor individually or as a partner, or jointly or in common with any others, and whether absolute or contingent, and whether owing by the Mortgagor as principal debtor or as accommodation maker or as indorser, liquidated or unliquidated, and whenever contracted, accrued or payable.

5.      Paragraph Headings. The headings of paragraphs herein are inserted only for convenience and shall in no way define, describe or limit the scope or intent of any provisions of this Mortgage.

6.      Parties in Interest. As and when used herein, the term "Mortgagor" shall mean and include the Mortgagor above-named and the Mortgagor's successors and permitted assigns; the term "Mortgagee" shall mean and include the Mortgagee above-named and the Mortgagee's personal representatives, successors and assigns; and the use of any gender shall include all genders.

7.      <u>Applicable Laws</u>.  This Mortgage shall be governed by and shall be construed and interpreted under and pursuant to the laws of the State of Hawaii.  If any provision of this Mortgage is held to be invalid or unenforceable, such will not affect the validity or enforceability of the other provisions of this Mortgage.

8.      <u>Notices</u>.  All notices, demands or documents to be delivered under this Mortgage shall be given in writing and sent by registered or certified mail addressed to the parties at the addresses set forth at the top of this Mortgage.  Such addresses may be changed by the addressee by serving notice as provided above.  Service of such notice shall be deemed complete on the date of delivery or two (2) business days after the date of mailing, as applicable.

9.      <u>Counterparts</u>.  This Mortgage may be executed in counterparts, each of which shall be deemed an original, and said counterparts shall together constitute one and the same agreement, binding all of the parties hereto, notwithstanding all of the parties are not signatories to the original or the same counterparts.  In making proof of this Mortgage, it shall not be necessary to produce or account for more than one such counterpart.  For all purposes, duplicate unexecuted pages of the counterparts may be discarded and the remaining pages assembled as one document.

*[Signatures appear on next page.]*

Kai Decl. Exhibit P. 17

IN WITNESS WHEREOF, the Mortgagor and the Mortgagee have executed these presents as of the date first above written.

**MORTGAGOR:**

**HAWAIIAN RIVERBEND, LLC,** a Hawaii limited liability company

4/28/10

By _____
Michael Miroyan
Its Manager

**MORTGAGEE:**

4-29-10

_____ *TRUSTEE*
**KENNETH Y. KAI,** Trustee, of the Kai Family 1998 Trust

4-29-10

_____ *TRUSTEE*
**TAE K. KAI,** Trustee, of the Kai Family 1998 Trust

Kai Decl. Exhibit P. 18

**ACKNOWLEDGMENT**

State of California Santa Clara
County of

On April 28, 2010 _____ before me, J. Belyeu, Notary Public _____
                                        (insert name and title of the officer)

personally appeared MICHAEL MIROYAN, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
         BELYEU

```
J. BELYEU
Commission # 1795604
Notary Public - California
Santa Clara County
My Comm. Expires Apr 17, 2012
```

Kai Decl. Exhibit P. 19

## ACKNOWLEDGMENT

State of California
County of _Santa Clara_ )
                                )
On _April 29, 2010_ before me, _Emma J. Gonzalez, Notary Public_
                                          (insert name and title of the officer)
personally appeared KENNETH Y. KAI, who proved to me on the basis of satisfactory evidence to be the
person whose name is subscribed to the within instrument and acknowledged to me that he executed the
same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon
behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
          EMMA J. GONZALEZ

EMMA J. GONZALEZ
Commission # 1739002
Notary Public - California
Santa Clara County
My Comm. Expires Apr 29, 2011

ImanageDB:1319379.3                    14

# ACKNOWLEDGMENT

State of California,
County of *Santa Clara* )

On *April 29, 2010* before me, *Emma J. Gonzalez, Notary Public*
(insert name and title of the officer)
personally appeared TAE K. KAI, who proved to me on the basis of satisfactory evidence to be the person
whose name is subscribed to the within instrument and acknowledged to me that she executed the same in
her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf
of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
        EMMA J. GONZALEZ

EMMA J. GONZALEZ
Commission # 1739002
Notary Public - California
Santa Clara County
My Comm. Expires Apr 27, 2011

Kai Decl. Exhibit P. 21

All of that certain parcel of land situate at Waikoloa, District of South Kohala, Island and County of Hawaii, State of Hawaii, being LOT 9 of the "WAIKOLOA DEVELOPMENT", as shown on File Plan Number 1172, filed in the Bureau of Conveyances of the State of Hawaii, and containing an area of 31.322 acres, more or less.

BEING THE PREMISES ACQUIRED BY DEED

| | | |
|---|---|---|
| GRANTOR | : | WAIKOLOA MAUKA, LLC, a Delaware limited liability company |
| GRANTEE | : | HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company |
| DATED | : | November 23, 2009 |
| RECORDED | : | Document No. 2009-179060 |

SUBJECT, HOWEVER, to:

1. Any lien for real property taxes not yet delinquent (Tax Map Key No. (3) 6-8-002-021).

2. Reservation in favor of the State of Hawaii of all mineral and metallic mines.

3. DESIGNATION OF EASEMENT "E-W-1" (50 feet wide)

    PURPOSE     :     electrical, telephone and water line
    SHOWN       :     on File Plan No. 1172

4. GRANT to WAIKOLOA WATER CO., INC., dated December 20, 1978, recorded in Liber 13374 at Page 441, as amended by instrument dated February 4, 1981, recorded in Liber 15498 at Page 103; granting an easement over said Easement "E-W-1".

5. DESIGNATION OF EASEMENT "E-4" (75 feet wide)

    PURPOSE     :     electrical and telephone
    SHOWN       :     on File Plan No. 1172

6. GRANT

    TO          :     HAWAII ELECTRIC LIGHT COMPANY, INC.

    DATED       :     April 27, 1976
    RECORDED    :     Liber 11411, Page 135
    GRANTING    :     an easement for utility purposes over Easement "6" described therein

EXHIBIT A
Page 1 of 3

ImanageDB:1319379.3

7. GRANT

    TO        :    WAIKOLOA RESORT UTILITIES, INC. doing business as WEST HAWAII UTILITY COMPANY

    DATED     :    February 19, 1998
    RECORDED :    Document No. 98-028918
    GRANTING :    an easement over only that portion of said Easement "E-W-1" affecting Lot 9 of File Plan No. 1172

8. GRANT

    TO        :    WAIKOLOA WATER CO., INC. doing business as WEST HAWAII WATER COMPANY and WAIKOLOA RESORT UTILITIES, INC. doing business as WEST HAWAII UTILITY COMPANY

    DATED     :    February 19, 1998
    RECORDED :    Document No. 98-028921
    GRANTING :    an easement for utility purposes over Easement "W-2" described therein

9. GRANT

    TO        :    VERIZON HAWAII INC. now known as HAWAIIAN TELCOM, INC.

    DATED     :    ----- (acknowledged April 22, 2003 and May 23, 2003)
    RECORDED :    Document No. 2003-139270
    GRANTING :    an easement for utility purposes over Easement "1" described therein

10. The terms and provisions contained in the following:

    (A)    DEED WITH COVENANTS AND RESERVATION OF EASEMENTS AND OTHER RIGHTS

        DATED     :    September 20, 2005
        RECORDED :    Document No. 2005-188909

        Certain water rights reserved in said Deed have been assigned pursuant to that certain WATER RIGHTS QUITCLAIM dated September 20, 2005, recorded as Document No. 2005-188913, by and between WAIKOLOA LAND & CATTLE CO., "Grantor", and WAIKOLOA WATER CO., INC., and WAIKOLOA RESORT UTILITIES, INC., "Grantee".

EXHIBIT A
Page 2 of 3

ImanageDB:1319379.3

    (B)    GRANT OF RIGHT TO DESIGNATE AND GRANT EASEMENTS

|  |  |  |
|---|---|---|
| DATED | : | September 20, 2005 |
| RECORDED | : | Document No. 2005-188911 |
| PARTIES | : | WAIKOLOA MAUKA, LLC, "Owner", and |
|  |  | WAIKOLOA LAND & CATTLE CO., "WDC" |

Said Grant was amended by instrument dated November 29, 2006, recorded as Document No. 2006-220312.

11.    The terms and provisions contained in the following:

INSTRUMENT:    DECLARATION OF RESTRICTIVE COVENANTS

|  |  |  |
|---|---|---|
| DATED | : | December 29, 2008 |
| RECORDED | : | Document No. 2008-193975 |

12.    The terms and provisions contained in the following:

INSTRUMENT:    DISCLOSURE AGREEMENT

|  |  |  |
|---|---|---|
| DATED | : | December 29, 2008 |
| RECORDED | : | Document No. 2008-193976 |
| PARTIES | : | WAIKOLOA MAUKA, LLC, a Delaware limited liability company, "WML", WQJ2008 INVESTMENT, LLC, a Washington limited liability company, "WQJ2008", UKUMEHAME QUARRY COMPANY LIMITED PARTNERSHIP, a Hawaii limited partnership, "Ukumehame", and collectively with WQJ2008, "Buyer" |

13.    Historic ceremonial and burial sites and similar matters which an archaeological study and archaeological inspection of the land would disclose.

14.    Any other instrument recorded prior to the recordation of this Mortgage.

**END OF EXHIBIT "A"**

EXHIBIT A
Page 3 of 3

ImanageDB:1319379.3

# EXHIBIT 3

## [Partial Release of Mortgage, dated February 4, 2014]

orig

I hereby certify that this is
a true copy from the records
of the Bureau of Conveyances.

*Nicki Ann Thompson*

Registrar of Conveyances
Assistant Registrar, Land Court
State of Hawaii

STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
February 28, 2014 8:01 AM
Doc No(s) A-51720204

1    1 / 1    KEO
B-32424347

/s/ NICKI ANN THOMPSON
REGISTRAR

| LAND COURT | REGULAR SYSTEM |
|---|---|

Return By Mail ☐   Pick-Up ☐   To:

HAWAIIAN RIVERBEND, LLC
P. O. Box 3181
Saratoga, CA  95070



TITLE NO.:   ~~201312404~~
ESCRHO NO.:   ~~23113020720~~  6825003919
~~JANET LUM WON~~ Angela Byerly

TOTAL NUMBER OF PAGES:   8

TITLE OF DOCUMENT:

## PARTIAL RELEASE OF MORTGAGE

PARTIES TO DOCUMENT:

**LENDER:**   KENNETH Y. KAI and TAE K. KAI, Trustees of the Kai Family 1998 Trust dated October 5, 1998, with full powers to sell, mortgage, lease or otherwise deal with the land, whose mailing address is P. O. Box 3136, San Jose, CA  95156

**BORROWER:**   HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company, whose mailing address is P. O. Box 3181, Saratoga, CA  95070

TAX MAP KEY (3) 6-8-002-052
(FORMERLY 6-8-002-021)
LOT 9-B

4822-1151-1060/K27567/7-15-13



Exhibit 3

## PARTIAL RELEASE OF MORTGAGE RELEASE

KNOW ALL MEN BY THESE PRESENTS:

That **KENNETH Y. KAI and TAE K. KAI, Trustees of the Kai Family 1998 Trust dated October 5, 1998, with full powers to sell, mortgage, lease or otherwise deal with the land,** whose mailing address is **P. O. Box 3136, San Jose, CA 95156,** as Mortgagee, under that certain Mortgage dated April 28, 2010, recorded in the Bureau of Conveyances of the State of Hawaii, as Document No. 2010-062606, in consideration of the sum of ONE AND NO/100 DOLLAR ($1.00) to Lender paid by **HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company,** whose mailing address is **P. O. Box 3181, Saratoga, CA 95070,** (hereinafter referred to as "Mortgagor"), receipt whereof is hereby acknowledged, does hereby cancel, discharge and release said Mortgage and all right, title and interest by said Lender acquired under said Mortgage in and to the property hereinafter described:

All of that real property more particularly described in Exhibit A attached hereto and made a part hereof, subject to the encumbrances noted therein.

PROVIDED, HOWEVER, that this Release shall not in any way affect or impair the right of the Lender to hold under said Mortgage as security for the obligations remaining due under said Mortgage and Note secured thereby, or to sell under power of sale in said Mortgage contained, all of the remainder of the premises and property thereby conveyed and granted and not hereby, nor heretofore, released.

IN WITNESS WHEREOF, the said Mortgagee has executed these presents on this 4th day of February, 2014.

_____ TRUSTEE
**KENNETH Y. KAI, Trustee of the Kai Family 1998 Trust dated October 5, 1998**

APPROVED AS TO FORM
CARLSMITH BALL LLP

BY _____Robert D. Triantos_____
            7-15-13

_____ TRUSTEE
**TAE K. KAI, Trustee of the Kai Family 1998 Trust dated October 5, 1998**

**"GRANTEE"**

2.

STATE OF CALIFORNIA )
COUNTY OF *Santa Clara* ) SS.

On *February 4, 2014*, before me, *Sharon La Fountain Evans*, a Notary Public, personally appeared **KENNETH Y. KAI,** ~~Trustee of the Kai Family 1998 Trust dated October 5, 1998,~~ who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____ (seal)

SHARON LA FOUNTAIN EVANS
Commission # 1927519
Notary Public - California
Santa Clara County
My Comm. Expires Mar 31, 2015

STATE OF CALIFORNIA )
COUNTY OF *Santa Clara* ) SS.

On *February 4, 2014*, before me, *Sharon La Fountain Evans*, a Notary Public, personally appeared **TAE K. KAI,** ~~Trustee of the Kai Family 1998 Trust dated October 5, 1998,~~ who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____ (seal)

SHARON LA FOUNTAIN EVANS
Commission # 1927519
Notary Public - California
Santa Clara County
My Comm. Expires Mar 31, 2015

## EXHIBIT "A"

All of that certain parcel of land (being portion(s) of the land(s) described in and covered by Royal Patent 5671, Land Commission Award 8521-B, Apana 1 to G. D. Hueu of Waikoloa Development) situate, lying and being at Waikoloa, District of South Kohala, Island of Hawaii, State of Hawaii, being LOT 9-B, being a portion of Lot 9, Waikoloa Development, File Plan 1172, and thus bounded and described:

Beginning at the northwest corner of this parcel of land, being also the northeast corner of Lot 9-A, the coordinates of said point of beginning referred to Government Survey Triangulation Station "PUU HINAI" being 10,073.89 feet north and 2,246.46 feet west and running by azimuths measured clockwise from true South:

| | | | | | |
|---|---|---|---|---|---|
| 1. | 288° | 03' | 09" | 532.88 | feet along Lot 6, Waikoloa Development File Plan 1172; |
| 2. | 21° | 44' | 07" | 887.12 | feet along Lot 8, Waikoloa Development, File Plan 1172; |
| 3. | 111° | 44' | 07" | 447.84 | feet along Lot 9-C; |
| 4. | 201° | 44' | 07" | 279.00 | feet along the same; |
| 5. | 111° | 44' | 07" | 164.63 | feet along the same; |

Thence, along the same on a curve to the left with a radius of 191.00 feet, the chord azimuth and distance being;

| | | | | | |
|---|---|---|---|---|---|
| 6. | 87° | 37' | 40" | 156.03 | feet; |
| 7. | 63° | 31' | 12" | 102.13 | feet along the same; |

Thence, along the same on a curve to the right with a radius of 265.00 feet, the chord azimuth and distance being:

| | | | | | |
|---|---|---|---|---|---|
| 8. | 74° | 55' | 34" | 104.81 | feet; |
| 9. | 86° | 19' | 57" | 24.17 | feet along the same; |

Thence, along Paniolo Avenue on a curve to the left with a radius of 540.00 feet, the chord azimuth and distance being;

| | | | | | |
|---|---|---|---|---|---|
| 10. | 179° | 31' | 19" | 60.09 | feet; |
| 11. | 266° | 19' | 57" | 20.83 | feet along Lot 9-A; |

**EXHIBIT "A"**
**Page 1 of 5**

Thence, along the same on a curve to the left with a radius of 205.00 feet, the chord azimuth and distance being;

12.  254°  55'  34"  81.08  feet;

13.  243°  31'  12"  102.13  feet along the same;

Thence, along the same on a curve to the right with a radius of 251.00 feet, the chord azimuth and distance being;

14.  267°  37'  40"  205.04  feet;

15.  297°  44'  07"  80.70  feet along the same;

16.  201°  44'  07"  513.89  feet along the same to the point of beginning and containing an area of 10.750 acres, more or less.

Together with Easement AE-1 for access purposes, more particularly described as follows:

All of that certain easement parcel of land being a portion of Lot 9-B, Waikoloa Development, Waikoloa, District of South Kohala, Island of Hawaii, Hawaii.

Beginning at the northeast corner of this easement parcel of land, the coordinates of said point of beginning referred to Government Survey Triangulation Station "PUU HINAI" being 9,596.53 feet north and 2,436.77 feet west and running by azimuths measured clockwise from true South:

1.  21°  44'  07"  60.00  feet;

2.  111°  44'  07"  80.70  feet along Lot 9-C;

Thence, along the same on a curve to the left with a radius of 191.00 feet, the chord azimuth and distance being;

3.  87°  37'  40"  156.03  feet;

4.  63°  31'  12"  102.13  feet along the same;

Thence, along the same on a curve to the right with a radius of 265.00 feet, the chord azimuth and distance being:

5.  74°  55'  34"  104.81  feet;

**EXHIBIT "A"**
**Page 2 of 5**

Kai Decl. Exhibit P. 30

| 6. | 86° | 19' | 57" | 24.17 | feet along the same; |
|---|---|---|---|---|---|

Thence, along Paniolo Avenue on a curve to the left with a radius of 540.00 feet, the chord azimuth and distance being;

| 7. | 179° | 31' | 19" | 60.09 | feet; |
|---|---|---|---|---|---|
| 8. | 266° | 19' | 57" | 20.83 | feet along Lot 9-A; |

Thence, along the same on a curve to the left with a radius of 205.00 feet, the chord azimuth and distance being;

| 9. | 254° | 55' | 34" | 81.08 | feet; |
|---|---|---|---|---|---|
| 10. | 243° | 31' | 12" | 102.13 | feet along the same; |

Thence, along the same on a curve to the right with a radius of 251.00 feet, the chord azimuth and distance being;

| 11. | 267° | 37' | 40" | 205.04 | feet; |
|---|---|---|---|---|---|
| 12. | 291° | 44' | 07" | 80.70 | feet along the same to the point of beginning and containing an area of 0.667 acres, more or less. |

BEING THE PREMISES ACQUIRED BY WARRANTY DEED

GRANTOR:     WAIKOLOA MAUKA, LLC, a Delaware limited liability company

GRANTEE:     HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company

DATED:     November 23, 2009
RECORDED:     Document No. 2009-179060

## SUBJECT, HOWEVER TO:

1.  Mineral and water rights of any nature in favor of the State of Hawaii.

2.  DESIGNATION OF EASEMENT "E-W-1" (50 feet wide)

PURPOSE:     electrical, telephone and water line
SHOWN:     on File Plan No. 1172

**EXHIBIT "A"**
**Page 3 of 5**

3. GRANT to WAIKOLOA WATER CO., INC., dated December 20, 1978, recorded in Liber 13374 at Page 441, as amended by instrument dated February 4, 1981, recorded in Liber 15498 at Page 103; granting an easement over said Easement "E-W-1".

4. GRANT

    TO:           WAIKOLOA RESORT UTILITIES, INC. doing business as WEST HAWAII UTILITY COMPANY

    DATED:       February 19, 1998
    RECORDED:   Document No. 98-028918
    GRANTING:   an easement over only that portion of said Easement "E-W-1" affecting Lot 9 of File Plan No. 1172

5. GRANT

    TO:           VERIZON HAWAII INC. now known as HAWAIIAN TELCOM, INC.

    DATED:       ----- (acknowledged April 22, 2003 and May 23, 2003)
    RECORDED:   Document No. 2003-139270
    GRANTING:   an easement for utility purposes over Easement "1" described therein

6. DESIGNATION OF EASEMENT "AE-1"

    PURPOSE:    access
    SHOWN:     on Subdivision map 11-001060, approved November 29, 2012

7. The terms and provisions contained in the following:

    (A)   DEED WITH COVENANTS AND RESERVATION OF EASEMENTS AND OTHER RIGHTS

          DATED:      September 20, 2005
          RECORDED:   Document No. 2005-188909

          Certain water rights reserved in said Deed have been assigned pursuant to that certain WATER RIGHTS QUITCLAIM dated September 20, 2005, recorded as Document No. 2005-188913, by and between WAIKOLOA LAND & CATTLE CO., "Grantor", and WAIKOLOA WATER CO., INC., and WAIKOLOA RESORT UTILITIES, INC., "Grantee".

    (B)   GRANT OF RIGHT TO DESIGNATE AND GRANT EASEMENTS

          DATED:      September 20, 2005
          RECORDED:   Document No. 2005-188911

**EXHIBIT "A"**
**Page 4 of 5**

PARTIES:        WAIKOLOA MAUKA, LLC, "Owner", and WAIKOLOA
                LAND & CATTLE CO., "WDC"

Said Grant was amended by instrument dated November 29, 2006, recorded as
Document No. 2006-220312.

8.      The terms and provisions contained in the following:

        INSTRUMENT:     DECLARATION OF RESTRICTIVE COVENANTS

        DATED:          December 29, 2008
        RECORDED:       Document No. 2008-193975

9.      The terms and provisions contained in the following:

        INSTRUMENT:     DISCLOSURE AGREEMENT

        DATED:          December 29, 2008
        RECORDED:       Document No. 2008-193976
        PARTIES:        WAIKOLOA MAUKA, LLC, a Delaware limited liability
                        company, "WML", WQJ2008 INVESTMENT, LLC, a
                        Washington limited liability company, "WQJ2008",
                        UKUMEHAME QUARRY COMPANY LIMITED
                        PARTNERSHIP, a Hawaii limited partnership, "Ukumehame",
                        and collectively with WQJ2008, "Buyer"

10.     Historic ceremonial and burial sites and similar matters which an archaeological study
        and archaeological inspection of the land would disclose.

11.     The terms and provisions contained in the following:

        INSTRUMENT:     JOINT VENTURE AGREEMENT\

        DATED:          April 29, 2010
        RECORDED:       Document No. 2010-062607
        PARTIES:        WAIKALOA MAUKA, LC, a Delaware limited liability company
                        ("WM") and HAWAIIAN RIVERBEND, LLC, a Hawaii limited
                        liability company, ("HR")

**EXHIBIT "A"**
**Page 5 of 5**

EXHIBIT 4

[First Amendment of Promissory Note, dated August 8, 2013]

*η ừm*

I hereby certify that this is
a true copy from the records
of the Bureau of Conveyances.

*Nicki Ann Thompson*

Registrar of Conveyances
Assistant Registrar, Land Court
State of Hawaii



STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
November 18, 2013 8:01 AM
Doc No(s) A-50700518

/s/ NICKI ANN THOMPSON
REGISTRAR

1     1 / 2     CGG
B-32373220

___ Land Court System          Regular System ___

After Recordation Return By: (✓) Mail  (  ) Deliver

MR. & MRS. KENNETH KAI
P.O. BOX 3136
SAN JOSE, CA 95156

TG ACCOM ___466616○___  ①

RLS

CAC   15 pgs.

TITLE GUARANTY OF HAWAII HAS
FILED THIS DOCUMENT FOR RECORD
AS AN ACCOMMODATION ONLY. THIS
DOCUMENT HAS NOT BEEN
REVIEWED OR IN ANY WAY EXAMINED
AS TO ITS EFFECT ON REAL PROPERTY.

## FIRST AMENDMENT OF PROMISSORY NOTE

Exhibit 4



## FIRST AMENDMENT OF PROMISSORY NOTE

THIS FIRST AMENDMENT OF PROMISSORY NOTE ("Agreement") is made on Aug 8, 2013 , 2013, but is effective as of March 1, 2013 ("Effective Date"), by and among HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company, whose post office address is P.O. Box 3181, Saratoga, California 95070 ("Borrower"), and KENNETH Y. KAI and TAE K. KAI, Trustees, of the Kai Family 1998 Trust dated October 5, 1998, whose mailing address is P.O. Box 3136, San Jose, California 95156 (singularly and collectively, "Lender").

**I. BACKGROUND.**

A.    The Lender made a term loan (the "Loan") to the Borrower in the original principal amount of FIVE HUNDRED FORTY THOUSAND AND NO/100 DOLLARS (US $540,000.00), as evidenced by that certain Promissory Note dated May 3, 2010 (the "Original Note") executed by the Borrower in favor of the Lender.   Capitalized but undefined terms in this Agreement shall have the meanings ascribed to them in the Original Note.

B.    The Loan is secured by that certain Real Property Mortgage dated April 28, 2010 and recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2010-062606 (the "Mortgage") covering that certain parcel of land being Lot 9 of the Waikoloa Development as shown on File Plan Number 1172, containing an area of 31.322 acres, more or less, and identified by Tax Map Key No. (3) 6-8-002-021 (the "Mortgaged Property").   The Mortgaged Property was subsequently subdivided into three lots.

C.    Borrower has requested the Lender to amend the Mortgage to release a material portion of the mortgaged security by changing and replacing the legal description of the Mortgaged Property with a subdivided portion of the Mortgaged Property known as Lot 9-C, containing an area of approximately 14.622 acres.

D.    In consideration of the foregoing release of security, The Borrower has requested the Lender to amend the Note to increase the principal amount of the Loan from $540,000.00 to $809,504.00 and extend the Maturity Date of the Loan to December 1, 2013.

E.    The Lender is willing to so amend the Original Note and Mortgage, in accordance with the terms and conditions of this Agreement, the Note, and the Mortgage.

**II. AGREEMENTS.**  In consideration of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

A.    **First Amendment of Promissory Note.**

1.    The principal amount of the Original Note is hereby amended to be EIGHT HUNDRED NINE THOUSAND FIVE HUNDRED FOUR AND 00/100 DOLLARS ($809,504.00). Notwithstanding anything to the contrary in this Agreement or the Original Note, the Borrower and Lender hereby acknowledge and agree that the "balloon payment" due to Lender from Borrower on the Maturity Date shall be equal to EIGHT HUNDRED FORTY THOUSAND AND NO/100 DOLLARS ($840,000.00).

2.    The paragraph bearing the heading "Interest Rate" on page 1 of the Original Note is hereby deleted in its entirety and replaced with the following:

ImanageDB:2329349.9

2

"The interest payable under this Note shall be at the rate of **FIVE PERCENT (5.00%) per annum**. Interest shall be calculated on the basis of a three hundred sixty-five (365) day year for actual days elapsed."

      3.    The "Maturity Date", as described in the paragraph bearing the heading "**Payments; Maturity Date**" on page 1 of the Original Note, is hereby amended to be December 1, 2013.

      4.    The final sentence of the paragraph bearing the heading "**Default; Acceleration**" on page 2 of the Original Note is hereby deleted in its entirety and replaced with the following:

> "Notwithstanding anything to the contrary herein, upon any default by Maker, Holder shall provide to Maker a notice of such default and Maker shall have forty-five (45) days from such notice (the "Cure Period") to cure such default. Such forty-five (45) day Cure Period shall run concurrently with, and shall not be in addition to the Cure Period provided in the First Amendment to Real Property Mortgage executed concurrently with this Agreement."

      5.    Except as amended herein, the Original Note shall remain unaffected and shall continue in full force and effect.

    **B.**    **Full Force and Effect.** The provisions of the Original Note and any other documents evidencing or securing the Loan (the "**Loan Documents**") are hereby amended to conform with this Agreement, and in the event of any conflict between the provisions of this Agreement and the provisions of the Loan Documents, the provisions of this Agreement shall control; but in all other respects, the provisions of the Loan Documents shall continue in full force and effect. This Agreement constitutes an amendment only and not a novation or an accord and satisfaction

    **C.**    **Bind and Inure.** This Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective heirs, personal representatives, successors, successors in trust and assigns.

    **D.**    **Applicable Law; Severability.** This Agreement and each of the Loan Documents shall be governed by and interpreted in accordance with the laws of the State of Hawaii. If any provision of this Agreement is held to be invalid or unenforceable, the validity or enforceability of the other provisions shall remain unaffected.

    **E.**    **Paragraph Headings.** The heading of paragraphs in this Agreement are inserted only for convenience and shall in no way define, describe or limit the scope or intent of any provision of this Agreement.

    **F.**    **Incorporation of Agreements.** This Agreement incorporates all agreements between the parties relating to the subject matter hereof, and supersedes all other prior oral or written letters, agreements or understandings relating to the subject matter hereof. This Agreement may not be modified or amended, nor any of the provisions hereof waived, except by an instrument in writing signed by the parties hereto.

    **G.**    **Counterparts.** The parties hereto agree that this Agreement may be executed in counterparts, each of which shall be deemed an original, and said counterparts shall together constitute one and the same agreement, binding all of the parties hereto, notwithstanding all of the parties are not signatory to the original or the same counterparts. In making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart. For all purposes, including, without

3

limitation, delivery of this Agreement, duplicate unexecuted and unacknowledged pages of the counterparts may be discarded and the remaining pages assembled as one document.

4

Kai Decl. Exhibit P. 38

IN WITNESS WHEREOF, the parties have executed this Agreement on the date written above.

BORROWER:

HAWAIIAN RIVERBEND, LLC,
a Hawaii limited liability company

8/7/13
8/8/13

By _____
Michael Miroyan
Its Manager

LENDER:

_____
KENNETH Y. KAI, Trustee as aforesaid

_____
TAE K. KAI, Trustee as aforesaid

Kai Decl. Exhibit P. 39

STATE OF CALIFORNIA

COUNTY OF _Santa Clara_

On _August 10, 2013_ before me, _Quang Hung Hang , Notary Public_
(insert name and title of the officer)

personally appeared **MICHAEL MIROYAN**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____      (Seal)

---

DESCRIPTION OF THE ATTACHED DOCUMENT

_First Amendment of Promissory_
(Title or description of attached document)

_Note_
(Title or description of attached document continued)

Number of Pages: _4 + 7_

Document Date: _____

_____
(Additional Information)

---

CAPACITY CLAIMED BY SIGNER
   Trustee(s)
   Attorney-in-Fact
   Other _____

5

Kai Decl. Exhibit P. 40

STATE OF CALIFORNIA

COUNTY OF _Santa Clara_

On _October 10, 2013_ before me, _Sharon La Fountain Evans, Notary Public_
(insert name and title of the officer)

personally appeared **KENNETH Y. KAI**, Trustee as aforesaid, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____          (Seal)

SHARON LA FOUNTAIN EVANS
Commission # 1927519
Notary Public - California
Santa Clara County
My Comm. Expires Mar 31, 2015

DESCRIPTION OF THE ATTACHED DOCUMENT

_First Amendment of Promissory Note_
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages: _4 + 7_

Document Date: _____

_____
(Additional Information)

CAPACITY CLAIMED BY SIGNER
   Trustee(s)
   Attorney-in-Fact
   Other _____

6

ImanageDB:2329797.9

STATE OF CALIFORNIA

COUNTY OF _Santa Clara_

On _October 11, 2013_ before me, _Sharon la Fountain Evans, Notary Public_

(insert name and title of the officer)

personally appeared **TAE K. KAI**, Trustee as aforesaid, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____          (Seal)

SHARON LA FOUNTAIN EVANS
Commission # 1927519
Notary Public - California
Santa Clara County
My Comm. Expires Mar 31, 2015

DESCRIPTION OF THE ATTACHED DOCUMENT

_First Amendment of Promissory Note_

(Title or description of attached document)

_____

(Title or description of attached document continued)

Number of Pages: _4 + 7_

Document Date: _____

_____

(Additional Information)

CAPACITY CLAIMED BY SIGNER
    Trustee(s)
    Attorney-in-Fact
    Other _____

ImanageDB:2329797.9

7

<u>**Exhibit A**</u>

DESCRIPTION

# LOT 9-C

All of that certain parcel of land being a portion of Lot 9, Waikoloa
Development, File Plan 1172, being also a portion of R. P. 5671.
L. C. Aw. 8521-B, Apana 1 to G. D. Hueu of
Waikoloa Development, situate at Waikoloa,
District of South Kohala, Island of Hawaii, Hawaii

Beginning at the southeast corner of this parcel of land, being also along the north
side of Waikoloa Road and the southwest corner of Lot 8, Waikoloa Development, File
Plan 1172, the coordinates of said point of beginning referred to Government Survey
Triangulation Station "PUU HINAI" being 8,393.08 feet North and 1,531.27 feet West
and running by azimuths measured clockwise from True South:

| | | | | |
|---|---|---|---|---|
| 1. | 114° | 44' | 07" | 1280.73 | feet along the north side of Waikoloa Road; |
| 2. | 113° | 41' | 56" | 352.57 | feet along the same; |
| | | | | | Thence, along the intersection of Waikoloa Road and Paniolo Avenue on a curve to the right with a radius of 20.00 feet, the chord azimuth and distance being; |
| 3. | 157° | 32' | 49" | 27.71 | feet; |
| 4. | 201° | 23' | 42" | 304.78 | feet along Paniolo Avenue; |
| | | | | | Thence, along the same on a curve to the left with a radius of 540.00 feet, the chord azimuth and distance being; |
| 5. | 192° | 03' | 09" | 175.29 | feet; |
| 6. | 266° | 19' | 57" | 24.17 | feet along Lot 9-B; |
| | | | | | Thence, along the same on a curve to the left with a radius of 265.00 feet, the chord azimuth and distance being; |
| 7. | 254° | 55' | 34" | 104.81 | feet; |
| 8. | 243° | 31' | 12" | 102.13 | feet along the same; |

<u>EXHIBIT A</u>
Page 1 of 7

9

Kai Decl. Exhibit P. 43

Thence, along the same on a curve to the
right with a radius of 191.00 feet, the chord
azimuth and distance being:

| | | | | |
|---|---|---|---|---|
| 9. | 267° | 37' | 40" | 156.03 | feet; |
| 10. | 291° | 44' | 07" | 164.63 | feet along the same; |
| 11. | 21° | 44' | 07" | 279.00 | feet along the same; |
| 12. | 291° | 44' | 07" | 447.84 | feet along the same; |
| 13. | 21° | 44' | 07" | 263.57 | feet along Lot 8, Waikoloa Development, File Plan 1172; |
| 14. | 291° | 44' | 07" | 755.00 | feet along the same; |
| 15. | 21° | 44' | 07" | 180.00 | feet along the same to the point of beginning and containing an area of 14.622 acres, more or less |

BEING A PORTION OF THE PREMISES ACQUIRED BY DEED

| | | |
|---|---|---|
| GRANTOR | : | WAIKOLOA MAUKA, LLC, a Delaware limited liability company |
| GRANTEE | : | HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company |
| DATED | : | November 23, 2009 |
| RECORDED | : | Document No. 2009-179060 |

ImanageDB:2329797.9

10

**TOGETHER WITH**, Easement AE-1 for Access Purposes, being described as follows:

## EASEMENT AE-1
### (FOR ACCESS PURPOSES)

All of that certain easement parcel of land being a portion of
Lot 9-B, Waikoloa Development,
Waikoloa, District of South Kohala, Island of Hawaii, Hawaii
Beginning at the northeast corner of this easement parcel of land, the coordinates of said point of beginning referred to Government Survey Triangulation Station "PUU HINAI" being 9,596.53 feet North and 2,436.77 feet West and running by azimuths measured clockwise from True South:

| | | | | |
|---|---|---|---|---|
| 1. | 21° | 44' | 07" | 60.00 | feet; |
| 2. | 111° | 44' | 07" | 80.70 | feet along Lot 9-C; |
| | | | | | Thence, along the same on a curve to the left with a radius of 191.00 feet, the chord azimuth and distance being; |
| 3. | 87° | 37' | 40" | 156.03 | feet; |
| 4. | 63° | 31' | 12" | 102.13 | feet along the same; |
| | | | | | Thence, along the same on a curve to the right with a radius of 265.00 feet, the chord azimuth and distance being; |
| 5. | 74° | 55' | 34" | 104.81 | feet; |
| 6. | 86° | 19' | 57" | 24.17 | feet along the same; |
| | | | | | Thence, along Paniolo Avenue on a curve to the left with a radius of 540.00 feet, the chord azimuth and distance being; |
| 7. | 179° | 31" | 19" | 60.09 | feet; |

ImanageDB:2329797.9

II

| | | | | |
|---|---|---|---|---|
| 8. | 266° 19' 57" | 20.83 | | feet along Lot 9-A; |

Thence, along the same on a curve to the left with a radius of 205.00 feet, the chord azimuth and distance being;

| | | | |
|---|---|---|---|
| 9. | 254° 55' 34" | 81.08 | feet; |
| 10. | 243° 31' 12" | 102.13 | feet along the same; |

Thence, along the same on a curve to the right with a radius of 251.00 feet, the chord azimuth and distance being;

| | | | |
|---|---|---|---|
| 11. | 267° 37' 40" | 205.04 | feet; |
| 10. | 291° 44' 07" | 80.70 | feet along the same to the point of beginning and containing an area of 0.667 acres, more or less. |

[Seal: RONALDO B. AURELIO / LICENSED PROFESSIONAL LAND SURVEYOR / No. 7564 / HAWAII, U.S.A.]

Description Prepared By:
Engineering Partners Inc.

*[signature]*

RONALDO B. AURELIO
Licensed Professional Land Surveyor
Certificate Number 7564
Expires April 30, 2014

Hilo, Hawaii, December 2012

SUBJECT, HOWEVER, to:

1.  Reservation in favor of the State of Hawaii of all mineral and metallic mines.

2.  DESIGNATION OF EASEMENT "E-W-1" (50 feet wide)

    PURPOSE         :       electrical, telephone and water line
    SHOWN           :       on File Plan No. 1172

3.  GRANT to WAIKOLOA WATER CO., INC., dated December 20, 1978, recorded in Liber 13374 at Page 441, as amended by instrument dated February 4, 1981, recorded in Liber 15498 at Page 103; granting an easement over said Easement "E-W-1".

4.  DESIGNATION OF EASEMENT "E-4" (75 feet wide)

    PURPOSE         :       electrical and telephone

EXHIBIT A
Page 4 of 7

12

|  |  | SHOWN | : | on File Plan No. 1172 |

5. GRANT

        TO         :        HAWAII ELECTRIC LIGHT COMPANY, INC.

        DATED       :      April 27, 1976
        RECORDED   :      Liber 11411, Page 135
        GRANTING   :      an easement for utility purposes over Easement "6" described therein

6. GRANT

        TO         :        WAIKOLOA RESORT UTILITIES, INC. doing business as WEST HAWAII UTILITY COMPANY

        DATED       :      February 19, 1998
        RECORDED   :      Document No. 98-028918
        GRANTING   :      an easement over only that portion of said Easement "E-W-1" affecting Lot 9 of File Plan No. 1172

7. GRANT

        TO         :        WAIKOLOA WATER CO., INC. doing business as WEST HAWAII WATER COMPANY and WAIKOLOA RESORT UTILITIES, INC. doing business as WEST HAWAII UTILITY COMPANY

        DATED       :      February 19, 1998
        RECORDED   :      Document No. 98-028921
        GRANTING   :      an easement for utility purposes over Easement "W-2" described therein

8. GRANT

        TO         :        VERIZON HAWAII INC. now known as HAWAIIAN TELCOM, INC.

        DATED       :      ----- (acknowledged April 22, 2003 and May 23, 2003)
        RECORDED   :      Document No. 2003-139270
        GRANTING   :      an easement for utility purposes over Easement "1" described therein

9. No vehicular access and planting screen, as shown on Subdivision map 11-001060, approved November 29, 2012.

10. Designation of Easement "AE-1"

        PURPOSE   :      Access
        SHOWN     :      on Subdivision map 11-001060, approved November 29, 2012

11. The terms and provisions contained in the following:

        (A)    DEED WITH COVENANTS AND RESERVATION OF EASEMENTS AND

EXHIBIT A
Page 5 of 7

13

OTHER RIGHTS

DATED          :       September 20, 2005
RECORDED   :       Document No. 2005-188909

Certain water rights reserved in said Deed have been assigned pursuant to that certain WATER RIGHTS QUITCLAIM dated September 20, 2005, recorded as Document No. 2005-188913, by and between WAIKOLOA LAND & CATTLE CO., "Grantor", and WAIKOLOA WATER CO., INC., and WAIKOLOA RESORT UTILITIES, INC., "Grantee".

(B)      GRANT OF RIGHT TO DESIGNATE AND GRANT EASEMENTS

DATED          :       September 20, 2005
RECORDED   :       Document No. 2005-188911
PARTIES      :       WAIKOLOA MAUKA, LLC, "Owner", and WAIKOLOA LAND & CATTLE CO., "WDC"

Said Grant was amended by instrument dated November 29, 2006, recorded as Document No. 2006-220312.

12.     The terms and provisions contained in the following:

INSTRUMENT:     DECLARATION OF RESTRICTIVE COVENANTS

DATED          :       December 29, 2008
RECORDED   :       Document No. 2008-193975

13.     The terms and provisions contained in the following:

INSTRUMENT:     DISCLOSURE AGREEMENT

DATED          :       December 29, 2008
RECORDED   :       Document No. 2008-193976
PARTIES      :       WAIKOLOA MAUKA, LLC, a Delaware limited liability company, "WML", WQJ2008 INVESTMENT, LLC, a Washington limited liability company, "WQJ2008", UKUMEHAME QUARRY COMPANY LIMITED PARTNERSHIP, a Hawaii limited partnership, "Ukumehame", and collectively with WQJ2008, "Buyer"

14.     The terms and provisions contained in the following:

INSTRUMENT:     JOINT VENTURE AGREEMENT

DATED          :       April 29, 2010
RECORDED   :       Document No. 2010-062607
PARTIES      :       WAIKOLOA MAUKA, LLC, a Delaware limited liability company, "WM", and HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company, "HR"

EXHIBIT A
Page 6 of 7

14

Kai Decl. Exhibit P. 48

15. Historic ceremonial and burial sites and similar matters which an archaeological study and archaeological inspection of the land would disclose.

16. Any other instrument recorded prior to May 7, 2010.

**END OF EXHIBIT "A"**

ImanageDB:2329797.9

16

EXHIBIT 5

[Promissory Note dated August 7, 2013]

## PROMISSORY NOTE

**US $300,000.00**                                                                San Jose, California
                                                                                         August 7, 2013

FOR VALUE RECEIVED, the undersigned, **HAWAIIAN RIVERBEND, LLC**, a Hawaii limited liability company ("**Maker**"), promises to pay to the order of **KENNETH Y. KAI and TAE K. KAI, Trustees, of the Kai Family 1998 Trust dated October 5, 1998 ("Holder")**, the principal sum of **THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($300,000.00)** with interest thereon from August 7, 2013, computed on the principal balance from time to time outstanding at the applicable interest rate determined as set forth below.

     **Interest**. The interest payable under this Note shall be at the rate of **FIVE PERCENT (5.00%)** per annum. Interest shall be calculated on the basis of a three hundred sixty-five (365) day year for actual days elapsed.

     **Balloon Payment; Maturity Date**. Maker is not required to make payments of principal or interest until the Maturity Date. All principal outstanding under this Note, any accrued unpaid interest, and all fees, charges and other sums payable to the Holder shall be due and payable on August 6, 2016 (the "**Maturity Date**"), unless sooner due as provided in this Note. A single payment, called a "balloon payment", equal to the unpaid part of the principal plus any interest and other charges then due, must be paid by Maker on the Maturity Date.

     **Application of Payments**. All payments on this Note shall be made at P.O. Box 3136, San Jose, California 95156, or to such other place as the holder of this Note may designate from time to time. All payments on this Note shall be payable only in lawful money of the United States of America. Except in the case of an election to the contrary by Holder in the event of a default, and to the extent permitted by law, all payments will be applied first to charges, then to interest, and then to principal.

     **Prepayments**. The Maker shall have the privilege of making prepayments on the accrued interest and/or the principal balance outstanding under this Note, on any date without a prepayment penalty. Notwithstanding anything to the contrary herein, if Maker prepays all or a portion of the principal balance outstanding under this Note, the principal balance outstanding under this Note shall be reduced by the pro rata portion of the prepaid interest that was prepaid but not yet accrued as of the date of such principal prepayment.

     **Default; Acceleration**. If the Maker shall default in the payment of principal, interest or other fees or charges when due under this Note, or if the Maker shall default in the performance of or compliance with any term, covenant, condition or provision required to be performed or complied with by the Maker under that certain Real Property Mortgage executed by Maker and Holder concurrently herewith or security instrument referred to therein (such other agreements or instruments being hereinafter called the "**Loan Documents**") and such default shall not have been remedied during the period the Maker is required to remedy such default, then, and in any such event, the Holder shall have the option to declare the unpaid principal sum of this Note

ImanageDB:2346633.4

Exhibit 5

Kai Decl. Exhibit P. 51

together with all charges and interest accrued thereon to be immediately due and payable, and such principal sum, charges, and interest shall thereupon become and be due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived. Notwithstanding anything to the contrary herein, upon any default by Maker, Holder shall provide to Maker a notice of such default and Maker shall have sixty (60) days from such notice to cure such default.

**Attorneys' Fees**. The Maker promises to pay the Holder's reasonable attorneys' fees and such expenses as are incurred to induce or compel the payment of this Note or any portion of the indebtedness evidenced hereby, whether suit is brought hereon or not.

**Waiver**. Except as otherwise provided herein, the Maker, endorsers and guarantors hereof and all others who may become liable for any part of this obligation severally waive presentment, protest, demand and notice of protest, demand, dishonor and nonpayment of this Note and consent to any number of renewals or extensions of the time of payment hereof and to any release of parties obligated hereunder or forbearance in the enforcement hereof.

**No Oral Waiver, Modification or Cancellation**. No provision in this Note may be waived, modified or cancelled orally, but only by an agreement in writing and signed by the party against whom enforcement of any waiver, modification, discharge or cancellation is sought.

**Governing Law**. This Note shall be governed by and construed according to the laws of the State of Hawaii.

**Limitations on Interest**. Notwithstanding any provision to the contrary contained in the Loan Documents, the rate and amount of interest which the Maker shall be required to pay to the Holder shall in no event, contingency or circumstance exceed the maximum rate or amount limitation, if any, imposed by applicable law. If, from any circumstance whatsoever, performance by the Maker of any obligation under the Loan Documents at the time performance shall be due (including, without limiting the generality of the foregoing, the payment of any fee, charge or expense paid or incurred by the Maker which shall be held to be interest), shall involve transcending the limits of validity prescribed by law, if any, then, automatically, such obligation to be performed shall be reduced to the limit of such validity prescribed by applicable law. If, notwithstanding the foregoing limitations, any excess interest shall at the maturity of the Note be determined to have been received, the same shall be deemed to have been held as additional security. The foregoing provisions shall never be superseded or waived and shall control every other provision of all agreements between the Holder and the Maker.

**Notices**. Any notice which a party is required or may desire to give the other under this Note or the Loan Documents shall be in writing and shall be sent by (a) personal delivery, (b) mail (either (i) by United States registered or certified mail, return receipt requested, postage prepaid, or (ii) by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery), (c) facsimile transmission with telephonic confirmation of receipt, or (d) e-mail with telephonic confirmation of receipt, addressed in the applicable manner as

ImanageDB:2346633.4

Kai Decl. Exhibit P. 52

described below (subject to the right of a party to designate a different address for itself by notice similarly given).

To Holder:      Kenneth Y. Kai and Tae K. Kai, Trustees
                    P.O. Box 3136
                    San Jose, CA 95156

To Maker:       Hawaiian Riverbend, LLC
                    Attn: Michael Miroyan
                    P.O. Box 3181
                    Saratoga, CA 95070

Any notice so given by mail, facsimile transmission, or e-mail shall be deemed to have been given as of the date of delivery (whether accepted or refused) established by U.S. Post Office return receipt, the overnight carrier's proof of delivery, or telephonic confirmation of receipt as the case may be. Any such notice given in any other manner shall be deemed given upon actual receipt of the same by the party to whom the same is to be given. Any party may give notice by more than one method described in this section.

**Parties in Interest.** The Holder shall have the right to assign the Holder's interest in this Note to any subsequent Holder or Holders of this Note. The Maker shall not assign the Maker's interest in this Note without the prior written consent of the Holder. All of the terms and provisions of this Note shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective personal representatives, heirs, successors and assigns, whether or not hereinabove so expressed. The use of any gender shall include all genders.

**Severability.** If any provision of this Note shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof.

**Paragraph Headings.** The headings of the paragraphs herein are for convenience and reference only and shall not be considered as defining or limiting in any way the scope or intent of any provision of this Note.

[Signature appears on next page.]

ImanageDB:2346633.4

IN WITNESS WHEREOF, Maker has caused this Note to be duly executed.

MAKER:                  **HAWAIIAN RIVERBEND, LLC**, a Hawaii limited
liability company

8/8/13

8/7/13       By _____

                  Michael Miroyan
                  Its Manager

<u>Promissory Note</u>
Page 4 of 3

ImanageDB:2346633.4

Kai Decl. Exhibit P. 54

STATE OF CALIFORNIA

COUNTY OF __Santa clara__

On __August 8, 2013__ before me, __Quang Hung Hang , Notary Public__
(insert name and title of the officer)

personally appeared **MICHAEL MIROYAN**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____          (Seal)

---

DESCRIPTION OF THE ATTACHED DOCUMENT

__Promissory Note__
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages: __4__

Document Date: __August 7, 2013__

_____
(Additional Information)

QUANG HUNG HANG
Commission # 2020036
Notary Public - California
Santa Clara County
My Comm. Expires May 3, 2017

---

CAPACITY CLAIMED BY SIGNER
   Trustee(s)
   Attorney-in-Fact
   Other _____

Kai Decl. Exhibit P. 55

EXHIBIT 6

[Real Property Mortgage, dated August 7, 2013]



I hereby certify that this is
a true copy from the records
of the Bureau of Conveyances.

*Nicki Ann Thompson*
Registrar of Conveyances
Assistant Registrar, Land Court
State of Hawaii

STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
November 18, 2013 8:01 AM
Doc No(s) A-50700519

/s/ NICKI ANN THOMPSON
REGISTRAR

22    2/2    CGG
B-32373220



Return by Mail ( X ) Pickup ( ) To:
Cades Schutte LLP
1000 Bishop St., Suite 1200
Honolulu, HI 96813
Attn: W. Shultz, Esq.

TITLE GUARANTY OF HAWAII HAS
FILED THIS DOCUMENT FOR RECORD
AS AN ACCOMMODATION ONLY. THIS
DOCUMENT HAS NOT BEEN
REVIEWED OR IN ANY WAY EXAMINED
AS TO ITS EFFECT ON REAL PROPERTY.

TG ACCOM 4666152

R16

Total No. of Pages:

Tax Map Key No.: (3) 6-8-002-053 (Lot 9-C)

## REAL PROPERTY MORTGAGE

THIS REAL PROPERTY MORTGAGE (this "**Mortgage**") is made on August 7, 2013, by **HAWAIIAN RIVERBEND, LLC**, a Hawaii limited liability company, whose address is P.O. Box 3181, Saratoga, California 95070 (the "**Mortgagor**"), to **KENNETH Y. KAI and TAE K. KAI, Trustees, of the Kai Family 1998 Trust dated October 5, 1998**, whose address is P.O. Box 3136, San Jose, California 95156 (the "**Mortgagee**"),

W I T N E S S E T H   T H A T :

In consideration of the sum of **THREE HUNDRED THOUSAND AND NO/100 DOLLARS (US $300,000.00)** (the "**Loan**"), now owing by the Mortgagor to the Mortgagee, to secure the payment thereof, together with interest thereon, according to the provisions of that certain promissory note executed concurrently herewith by the Mortgagor, as maker, and made payable to the Mortgagee, the provisions of such note and any renewals, extensions or modifications thereof being incorporated herein by reference, being secured hereby and being hereinafter referred to as the "**Note**";

AND ALSO to secure the observance and performance by the Mortgagor of all covenants, conditions and agreements required to be observed and performed by the Mortgagor under this Mortgage and under any other instruments or agreements executed by the Mortgagor concurrently herewith, including, but not limited to, the payment by the Mortgagor to the Mortgagee of all sums expended or advanced by the Mortgagee pursuant to any provision of this Mortgage or any such

ImanageDB:2346634.3

Exhibit 6

other instrument or agreement (the Note and this Mortgage being hereinafter called the "**Loan Documents**");

THE MORTGAGOR DOES HEREBY grant, bargain, sell, assign and convey unto the Mortgagee, its successors and assigns, all of that certain property described in Exhibit "A" attached hereto and made a part hereof (the "**Property**"), subject to the encumbrances (the "**Encumbrances**"), if any, set forth in such Exhibit.

TOGETHER WITH all buildings and improvements now located on the real property described above and any and all buildings, improvements and building materials that may be placed thereon during the existence of this Mortgage and all rents, royalties, profits, revenues, income and other benefits arising from the use or enjoyment of all or any portion of such property or any contract pertaining to the use or enjoyment thereof;

ALSO TOGETHER with all furniture, furnishings, machinery, appliances, apparatus, equipment, inventory, fittings, fixtures and articles of personal property of every kind and nature whatsoever, other than consumable goods, now or hereafter located in or upon such real property or any part thereof (hereinafter called "**Equipment**") and now owned or hereafter acquired by the Mortgagor, it being understood and agreed that all of the Equipment is part and parcel of the improvements on such real property and appropriated to the use thereof, and whether affixed or annexed or not, shall for the purpose of this Mortgage be deemed conclusively to be real estate and conveyed hereby, the Mortgagor agreeing to execute and deliver, from time to time, such further instruments as may be requested by the Mortgagee to confirm the lien of this Mortgage on the Equipment;

ALSO TOGETHER with any and all awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to such real property and improvements as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to or decrease in the value of such real property to the extent of all amounts which may be secured by this Mortgage at the date of receipt of any such award or payment by the Mortgagee, and of the reasonable counsel fees, costs and disbursements incurred by the Mortgagee in connection with the collection of such award or payment, the Mortgagor agreeing to execute and deliver, from time to time, such further instruments as may be required by the Mortgagee to confirm such assignment to the Mortgagee of any such award or payment;

ALSO TOGETHER with all right, title and interest of the Mortgagor in and to (1) all leases, partial assignments, subleases and other contracts of conveyance covering all or any portion of such real property or the Equipment, and any and all modifications and extensions thereof; and (2) all binders or policies of insurance of any kind covering all or any portion of such real property or the Equipment, and any riders, amendments, extensions, renewals, supplements or revisions thereof (the items of collateral described in this paragraph being hereinafter called the "**Collateral**");

TO HAVE AND TO HOLD the above-described real property, Equipment, Collateral, awards, payments and other property together with all rights, privileges and appurtenances thereto

2

belonging (all of such property being hereinafter referred to as the "**Mortgaged Property**") unto the Mortgagee, absolutely and forever; SUBJECT, HOWEVER, to the Encumbrances.

UPON CONDITION that if the Mortgagor shall well and truly pay to the Mortgagee the principal amount of the Note, with interest, fees, charges and premium, if any, according to its provisions and effect, and if the Mortgagor shall observe and perform all of the covenants, conditions and agreements to be observed and performed by the Mortgagor in this Mortgage and the other Loan Documents, and if the Mortgagor shall pay the costs of release, then these presents shall be void, and that, subject to the terms hereof, until the happening of an Event of Default, as hereinafter defined, the Mortgagor shall be permitted to use and possess the Mortgaged Property and to use and receive the rents, issues, profits, revenues and other income thereof;

BUT, if any one or more of the following events ("**Events of Default**") shall occur:

(a)     Default shall be made by the Mortgagor in the payment of principal, interest, fees or charges when due on the Note or any other obligation secured hereby; or

(b)     Default shall be made by the Mortgagor in the due and punctual observance or performance of any other covenant, condition or agreement required to be observed or performed by the Mortgagor under this Mortgage or the Note or under any of the other Loan Documents and such default shall not have been remedied within ninety (90) days after notice of the occurrence of the default; or

(c)     The Mortgagor shall become insolvent or shall be voluntarily or involuntarily dissolved or shall admit in writing the Mortgagor's inability to meet the Mortgagor's debts as they become due, or the Mortgagor shall file a voluntary petition in bankruptcy, or make an assignment for the benefit of creditors, or consent to the appointment of a receiver or trustee for all or a substantial part of the Mortgagor's properties, or file a petition, answer or other instrument seeking or acquiescing to the arrangement of the Mortgagor's debts, or other relief under the federal bankruptcy laws or any other applicable law for the relief of debtors of the United States of America or any state or territory thereof; or

(d)     A decree or order of a court having jurisdiction in the premises shall be entered (i) adjudging the Mortgagor to be bankrupt or insolvent, or (ii) appointing a receiver or trustee or assignee in bankruptcy or insolvency of the Mortgagor or the Mortgagor's properties, or (iii) directing the winding up or liquidation of the Mortgagor's affairs;

Notwithstanding anything to the contrary herein, upon any default by Mortgagor, Mortgagee shall provide to Mortgagor a notice of such default and Mortgagor shall have sixty (60) days from such notice to cure such default, including, but not limited to any of the events described in subsections (a) through (d) above.

THEN, AND IN ANY SUCH EVENT:

(a)     The Mortgagee may, without notice, presentment or demand, declare the unpaid principal amount of the Note to be immediately due and payable, and such principal amount shall

Kai Decl. Exhibit P. 59

thereupon become and be immediately due and payable, and shall thereafter bear interest until fully paid at the rate specified in the Note;

(b)     The Mortgagor, upon demand of the Mortgagee, shall forthwith surrender to the Mortgagee the actual possession of the Mortgaged Property and, to the extent permitted by law, the Mortgagee itself or such officers or agents as it may appoint: (i) may enter and take possession of the Mortgaged Property, together with the books, papers and accounts of the Mortgagor relating thereto; (ii) may exclude the Mortgagor, and the Mortgagor's agents and servants therefrom; (iii) may hold, operate and manage the same and from time to time make all needful repairs and such alterations, additions, advances and improvements as the Mortgagee shall deem appropriate; and (iv) may receive tolls, rents, revenues, issues, income, product and profits thereof and out of the same may pay all proper costs and expenses of so taking, holding and managing the same, including reasonable compensation to the Mortgagee's agents, attorneys and counsel, and any taxes and assessments and other charges prior to the lien of this Mortgage, which the Mortgagee shall deem necessary or desirable to pay, and all expenses of such repairs, alterations, additions and improvements, and other disbursements made by the Mortgagee pursuant to the terms hereof, and may apply the remainder of the monies so received by the Mortgagee to the payment of any sums secured hereby, including but not limited to, the unpaid principal of, and interest on, the Note;

(c)     The Mortgagee may, to the extent permitted by law, with or without first taking possession, sell the Mortgaged Property, in whole or, to the extent permitted by law, in part, at public auction in the State of Hawaii, or at such place as may be required by law, having first given notice of such sale by publication as may be required by law, and may adjourn such sale from time to time by announcement at the time and place appointed for such sale or adjourned sale, and upon such sale, the Mortgagee may make and deliver to any purchaser a good and sufficient deed, conveyance, or bill of sale, and good and sufficient receipts for the purchase money, and do and perform all other acts as may be necessary fully to carry into effect this power of sale;

(d)     The Mortgagee may, either with or without first taking possession, proceed by action or actions at law or in equity, or by any other appropriate remedy, to enforce payment of the Note or performance of any other obligation secured hereby, and to foreclose this Mortgage, and to sell, in whole, or to the extent permitted by law, in part, the Mortgaged Property under the judgment or decree of a court or courts of competent jurisdiction;

(e)     Upon the institution of judicial proceedings to enforce its rights hereunder, the Mortgagee, to the extent permitted by law, shall be entitled as a matter of right to the ex parte appointment (without bond) of a receiver or receivers of the Mortgaged Property, and of the tolls, rents, revenues, issues, income, product and profits thereof, pending such proceedings, with such powers as the court making such appointment shall confer; and

(f)     The Mortgagee shall have the right to enforce one or more remedies hereunder, or any other remedy the Mortgagee may have under the other Loan Documents, successively or concurrently, including, but not limited to, the right to foreclose this Mortgage with respect to any portion of the Mortgaged Property, if the operation of the remaining portion thereof is not thereby rendered unlawful under the then applicable laws, rules and regulations of the governmental authorities having jurisdiction in the premises, without thereby impairing the lien of this Mortgage

Kai Decl. Exhibit P. 60

on the remainder of the Mortgaged Property or affecting the remedies of the Mortgagee available with respect thereto.

Upon any sale, either under the power of sale hereby given or under judgment or decree in any judicial proceedings for foreclosure, or otherwise for enforcement of this Mortgage, the unpaid principal amount of the Note, any unpaid interest thereon, and all other obligations hereby secured, if not previously due, shall at once become and be immediately due and payable.

Upon any such sale, the Mortgagee may bid for and purchase the Mortgaged Property or any part thereof, and, upon compliance with the terms of sale, may hold, retain and possess and dispose of such property in its absolute right without further accountability, and the Mortgagee, at any such sale may, if permitted by law, after allowing for the proportion of the total purchase price required to be paid in cash for the costs and expenses of the sale, commissioner's compensation and other charges, in paying purchase money, turn in the Note, including any interest thereon, in lieu of cash, up to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon. The Mortgagee shall be permitted to bid at any public auction held to sell the Mortgaged Property without payment of a deposit or down payment of any kind. The Mortgagee shall not be required at confirmation of any public auction sale to extend credit or financing of any kind to the Mortgagor or any other party that may acquire the Mortgaged Property.

The Mortgagee may apply the proceeds of any such sale, first, to the costs and expenses of such sale and all proceedings in connection therewith, including, but not limited to, counsel fees, next, to the payment of any unreimbursed disbursements made by the Mortgagee for taxes or assessments or other charges prior to the lien of this Mortgage; next, to the payment of all other unreimbursed disbursements and expenses and unpaid charges and fees due and owing to the Mortgagee under the provisions of this Mortgage or any of the other Loan Documents; and next, to the payment of the unpaid principal sum of and interest on the Note and all other obligations of the Mortgagor to the Mortgagee, in such order as the Mortgagee shall determine; and the remainder, if any, shall be paid over to the Mortgagor. If such proceeds shall be insufficient to discharge the entire indebtedness under the Loan Documents, the Mortgagee may have any other legal recourse against the Mortgagor for the deficiency.

Any such sale shall, to the extent permitted by law, be a perpetual bar, both at law and in equity, against the Mortgagor and all persons and corporations lawfully claiming by or through or under the Mortgagor; and the Mortgagee is hereby irrevocably appointed the true and lawful attorney of the Mortgagor, in the Mortgagor's name and stead, for the purpose of effectuating any such sale, to execute and deliver all necessary deeds, conveyances, assignments, bills of sale and other instruments with power to substitute one or more persons or corporations with like power; provided, that the Mortgagor shall ratify and confirm any such sale or transfer if required by the Mortgagee by delivering all proper conveyances or other instruments to such persons or corporations as may be designated in any such request.

In case of any Event of Default, neither the Mortgagor nor anyone claiming by, through or under the Mortgagor, to the extent the Mortgagor may lawfully so agree, shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension or redemption laws now or hereafter in force in any locality where any of the Mortgaged Property is situated, in order to

Kai Decl. Exhibit P. 61

prevent or hinder the enforcement or foreclosure of this Mortgage, or the absolute sale of the Mortgaged Property, or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat; and the Mortgagor, for the Mortgagor and all who may claim under the Mortgagor, hereby waives, to the full extent that the Mortgagor may lawfully so do, the benefit of all such laws, and any and all right to have the estate comprised in the security intended to be created hereby marshalled upon any foreclosure of the lien hereof and agrees that the Mortgagee or any court having jurisdiction to foreclose such lien may sell the Mortgaged Property as an entirety.

In case the Mortgagee shall have proceeded to enforce any right hereunder and such proceedings shall have been discontinued or abandoned for any reason, then in every such case, the Mortgagor and the Mortgagee shall be restored to their former positions and rights hereunder with respect to the Mortgaged Property, and all rights, remedies and powers of the Mortgagee shall continue as if no such proceedings had been taken. No remedy herein reserved to the Mortgagee is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity, or by statute.

Nothing in this Mortgage, the Note or any of the other Loan Documents shall affect or impair the right, which is unconditional and absolute, of the holder of the Note to enforce payment of the principal, interest and other charges on the Note when the same shall become due, or the obligation of the Mortgagor, which is likewise unconditional and absolute, to pay such amounts at the respective times and places therein expressed.

A.      Mortgagor's Warranty. The Mortgagor hereby warrants and represents that: (1) the Mortgagor is the owner in fee simple of the Mortgaged Property and has good right to grant and convey the same as aforesaid; (2) such property is free from all encumbrances and liens, except for the Encumbrances, if any; and (3) the Mortgagor will WARRANT AND DEFEND the same unto the Mortgagee forever against the lawful claims and demands of all persons, except for the Encumbrances, if any.

B.      Mortgagor's Covenants. The Mortgagor hereby covenants and agrees with the Mortgagee as follows:

1.      Payment of Secured Obligations. The Mortgagor will pay to the holder of the Note the principal and interest due thereunder, and all fees, charges and other sums payable under the Loan Documents, all according to the provisions thereof, and will also pay and discharge any and all obligations that are now or hereafter may be or become owing by the Mortgagor to the Mortgagee under the Loan Documents and on any and every other account, together with interest, fees, charges and other sums payable thereon as may be specified with respect thereto.

2.      Payment of Real Property Taxes, Assessments, etc. The Mortgagor will punctually pay and discharge, or cause to be paid and discharged, from time to time as the same shall become due, all real property taxes, rates, assessments, impositions, duties, water rates, sewer rates and other charges of every description to which the Mortgaged Property, or any part thereof, or any improvements thereon, may during the term of this Mortgage become liable by authority of law,

Kai Decl. Exhibit P. 62

the payment of which shall be secured by this Mortgage; PROVIDED, HOWEVER, that real property taxes may be paid in semiannual installments and improvement or betterment assessments may be paid in annual installments, upon condition that, in each case, the same are not allowed to become delinquent, and that the Mortgagor will, upon request, deposit a copy of the receipts therefor with the Mortgagee not later than the final date such taxes, assessments and charges may be paid without penalty.

      3.    <u>Observance of Laws</u>. The Mortgagor will duly observe and conform to all laws, rules and regulations made by any governmental authority, and all valid requirements of any regulatory body which may acquire jurisdiction, which apply or relate to any of the Mortgaged Property.

      4.    <u>Maintenance and Inspection</u>. The Mortgagor will keep and maintain all buildings, structures and improvements now located or hereafter constructed on the Mortgaged Property in good repair, working order and condition, and will permit the Mortgagee and any persons authorized by the Mortgagee to enter and inspect the Mortgaged Property at all reasonable times.

      5.    <u>Waste, Unlawful Use, etc</u>. The Mortgagor will not commit or suffer any strip or waste, or unlawful, improper or offensive use of the Mortgaged Property, or any act or negligence whereby such property or any interest therein shall become liable to seizure or attachment or mesne or final process of law or whereby the lien provided hereby shall be impaired.

      6.    <u>Sale, Transfer, Lease, etc</u>. The Mortgagor will not sell (including by agreement of sale), convey, assign, transfer or lease the Mortgaged Property or any interest therein while this Mortgage remains in effect.

      7.    <u>Liens</u>. The Mortgagor will not create, suffer to be created or permit to remain upon the Mortgaged Property or any part thereof, or the income therefrom, any mechanics', materialmen's, laborers', tax, statutory or other involuntary lien or charge, except the Encumbrances, and liens of taxes and assessments not yet payable or payable without penalty so long as payable; provided, that nothing contained in this paragraph shall be deemed to require the Mortgagor to pay or cause to be paid, any tax, assessment or charge, or to satisfy any involuntary lien, so long as the Mortgagor in good faith by appropriate action diligently pursued shall contest, or cause to be contested, the validity thereof (provided the security afforded by this Mortgage shall not thereby be subjected to any sale, forfeiture or loss, or reasonable probability thereof).

      8.    <u>Insurance</u>. The Mortgagor will, during the term of this Mortgage, at the Mortgagor's sole cost and expense and for the mutual benefit of the Mortgagor and the Mortgagee maintain public liability insurance and property damage insurance against claims for personal injury or death or property damage suffered by others occurring upon, in or about any Mortgaged Property, or upon, in or about the adjoining streets and passageways thereof.

      9.    <u>Condemnation</u>. If the Mortgaged Property or any part thereof shall be condemned, the Mortgagee may appear and defend any such suit and is hereby irrevocably authorized to collect all of the proceeds and apply the same upon any obligation secured hereby.

Kai Decl. Exhibit P. 63

10. <u>Notice of Deposit of Insurance or Condemnation Proceeds</u>. The Mortgagor will, in case any proceeds of insurance upon the Mortgaged Property or any part thereof, or the proceeds of any award for the taking in eminent domain of the Mortgaged Property or any part thereof, are deposited with any person other than the Mortgagee, promptly notify the Mortgagee in writing of the name and address of the person with whom such proceeds have been deposited and the amount so deposited.

11. <u>Application of Payments</u>. The Mortgagee shall have the right and is hereby expressly authorized to apply any payments received and any rents, issues and profits collected to the payment of any indebtedness of the Mortgagor to the Mortgagee hereby secured in any order which the Mortgagee may determine, and any such application shall in all respects be binding upon the Mortgagor.

12. <u>Possession by Mortgagor after Sale</u>. In the event of a sale of the Mortgaged Property, or any part or parts thereof, under and by virtue of the provisions of this Mortgage, the purchaser or purchasers thereof shall have immediate and peaceable possession of the same, and if the Mortgagor shall remain in possession after the effective date of such sale, such possession shall be construed as a tenancy at sufferance only, giving unto the purchaser all remedies, by way of summary possession or otherwise, conferred by law in such case.

13. <u>Acknowledgment of Mortgage Debt</u>. Within five (5) days after request by the Mortgagee in writing, the Mortgagor will furnish to the Mortgagee or to any proposed assignee of this Mortgage a written statement, duly acknowledged, of the amount due on this Mortgage and whether any offsets, counterclaims or defenses exist against the mortgaged debt.

14. <u>Further Instruments</u>. The Mortgagor, upon reasonable request of the Mortgagee, will execute and deliver such further instruments and do such further acts as may be necessary or proper to carry out more effectively the purpose of this Mortgage and to subject the Mortgaged Property to the lien hereof, and any renewals, additions, substitutions, replacements or betterments thereto.

15. <u>Right of Mortgagee to Prevent or Remedy Default</u>. If the Mortgagor shall fail to observe or perform any of the terms, covenants and conditions required to be observed and performed by the Mortgagor under this Mortgage, unless the Mortgagor shall be engaged in good faith by appropriate action diligently pursued in contesting or causing to be contested the existence of such default and the security afforded by this Mortgage shall not thereby be subjected to any sale, forfeiture or loss, or reasonable probability thereof, the Mortgagee may (but shall not be obligated to): (i) take any action the Mortgagee deems necessary or desirable to prevent or remedy any such default by the Mortgagor, or to otherwise protect the security of this Mortgage, and (ii) enter in and upon the Mortgaged Property or any part thereof to such extent and as often as the Mortgagee, in its sole discretion, deems necessary or desirable in order to prevent or to remedy any such default by the Mortgagor or otherwise to protect the security of this Mortgage, and the Mortgagee may pay and advance for the account of the Mortgagor such sums of money as the Mortgagee, in its sole discretion, deems necessary for any such purpose.



Kai Decl. Exhibit P. 64

16.   _Right of Mortgagee to Defend Action Affecting Security_.   The Mortgagee may appear in and defend any action or proceeding at law or in equity purporting to affect the security of this Mortgage.

17.   _Right of Mortgagee to Extend Time of Payment, Substitute, Release Security, etc_. Without affecting the liability of any person, including the Mortgagor, for the payment of any indebtedness secured hereby, or the lien of this Mortgage on the Mortgaged Property (or the remainder thereof), for the full amount of any indebtedness unpaid, the Mortgagee may from time to time, without notice and without affecting or impairing any of its rights under this Mortgage: (a) release any person liable for the payment of any of the indebtedness; (b) extend the time or otherwise alter the terms of payment of any of the indebtedness or accept a renewal note or notes to evidence such an extension or alteration; (c) accept additional security therefor of any kind, including (but not limited to) deeds of trust, mortgages and security agreements; (d) alter, substitute or release any property securing the indebtedness; (e) resort for the payment of the indebtedness secured hereby to any securities therefor in such order and manner as it may see fit; (f) join in granting any easement or creating any restriction thereon; and (g) join in any extension or subordination or other agreement affecting this Mortgage or the lien or charge thereof.

18.   _Mortgagee's Expenses for Protection of Security_.   All advances, costs, expenses and attorneys' fees which the Mortgagee may make, pay or incur under any provision of this Mortgage for the protection of the security of the Mortgagee, or any of the rights of the Mortgagee in connection with the Mortgaged Property, or in foreclosure proceedings commenced and subsequently abandoned, or in any dispute or litigation in which the Mortgagee or the holder of the Note may become involved by reason of or arising out of this Mortgage or the other Loan Documents, shall be paid by the Mortgagor to the Mortgagee, upon demand, and shall bear interest until paid at the rate specified in the Note.

19.   _Partial Releases_.   The Mortgagee may release any portion of the Mortgaged Property without, as to the remainder of the Mortgaged Property, in any way impairing or affecting the lien, security interest and priorities herein provided for the Mortgagee compared to any subordinate lien holder.

20.   _Loss, Destruction, etc. of the Note_.   The Mortgagor will, in the event the Note shall be mutilated, destroyed, lost or stolen, deliver to the Mortgagee, in substitution therefor, a new Note containing the same terms and conditions as the old Note with a notation thereon of the unpaid principal and any accrued unpaid interest.   The Mortgagor shall be furnished with satisfactory evidence of the mutilation, destruction, loss or theft of the Note and also such security or indemnity as may be reasonably requested by the Mortgagor; PROVIDED, HOWEVER, that if the original Mortgagee named herein is then the Mortgagee under this Mortgage, an unqualified indemnity from the original Mortgagee named herein shall be deemed to be satisfactory security for indemnification.

21.   _Mortgagee's Agreement to Subordinate this Mortgage_.   Notwithstanding anything to the contrary herein or in the Note, this Mortgage shall be subordinate to any two (2) deeds of trust, mortgages, or other security instruments made by Mortgagor, exclusive of that certain Real Property Mortgage dated April 28, 2010 and recorded in the Bureau of Conveyances of the State

Kai Decl. Exhibit P. 65

of Hawaii as Document No. 2010-062606, as amended (each, an "**Additional Mortgage**"), that now or hereafter covers all or any part of the Property (the mortgagee under any Additional Mortgage is referred to herein as the "**Additional Mortgagee**"), without the necessity of any further instrument or act on the part of Mortgagee or Mortgagor to effectuate such subordination. Notwithstanding the subordination provided herein, any Additional Mortgagee may subordinate its Additional Mortgage to this Mortgage. Mortgagee shall execute such documentation as Mortgagor or an Additional Mortgagee may reasonably request to evidence the subordination of this Mortgage to such Additional Mortgage or, if the Mortgagor or Additional Mortgagee so elects, the subordination of such Additional Mortgage to this Mortgage. This Mortgage is also junior and subordinate to: (a) all covenants, conditions, restrictions and easements of record, as the same may be amended from time to time; and (b) all mortgages, deeds of trust, and other security instruments thereon, now or hereafter affecting the real property of which the Property are a part, and to all advances made on the security thereof, and to all renewals, modifications, consolidations, replacements and extensions thereof. If any mortgagee, elects to have this Mortgage prior to the lien of its mortgage or deed of trust, and gives written notice thereof to Mortgagee, this Mortgage shall be deemed prior thereto. Mortgagee shall execute such documentation as the Mortgagor or Additional Mortgagee may reasonably request to evidence the subordination of this Mortgage to such Additional Mortgage or, if the Mortgagor or Additional Mortgagee so elects, the subordination of such Additional Mortgage to this Mortgage. If Mortgagee has failed to execute and deliver such instruments as required by this paragraph within ten (10) days after receipt thereof from Mortgagor or Additional Mortgagee, and Mortgagee fails to execute and deliver such instrument within ten (10) days after receipt of written notice of such failure from Mortgagor or such Additional Mortgagee, Mortgagee shall be deemed to have agreed to all of the provisions in such instrument, and Mortgagee hereby irrevocably appoints Mortgagor its attorney-in-fact, coupled with an interest, with the power to execute and deliver such instruments should Mortgagee refuse or fail to do so.

C.    MISCELLANEOUS PROVISIONS:

1.    No Waiver. Any failure by the Mortgagee to insist upon the strict performance by the Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and the Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by the Mortgagor of any and all of the terms and provisions of this Mortgage to be performed by the Mortgagor.

2.    Security Agreement and Financing Statement Under Uniform Commercial Code. This Mortgage shall constitute a security agreement and financing statement under the Uniform Commercial Code, as enacted in Hawaii; and the Mortgagor, as debtor, hereby grants to the Mortgagee, as secured party, a security interest in any or all of the Equipment, in addition to a Mortgage lien upon the same as part of the realty. The Mortgagor will assist in the preparation of and execute from time to time, alone or with the Mortgagee, and deliver, file and record any financing or continuation statements, mortgages or other instruments, and do such further acts as the Mortgagee may request to establish, maintain and perfect the security interests of the Mortgagee in the Mortgaged Property, including (but not limited to) the Equipment, and all renewals, additions, substitutions, improvements to the same and the proceeds thereof, and otherwise to protect the same against the rights and interests of third parties. The terms of this

Kai Decl. Exhibit P. 66

Mortgage shall be deemed commercially reasonable within the meaning of the Uniform Commercial Code.

4. <u>Definitions</u>. The terms "advances," "costs" and "expenses" shall include, but shall not be limited to, reasonable attorneys' fees whenever incurred. The terms "indebtedness" and "obligations" shall mean and include, but shall not be limited to, all claims, demands, obligations and liabilities whatsoever, however arising, whether owing by the Mortgagor individually or as a partner, or jointly or in common with any others, and whether absolute or contingent, and whether owing by the Mortgagor as principal debtor or as accommodation maker or as indorser, liquidated or unliquidated, and whenever contracted, accrued or payable.

5. <u>Paragraph Headings</u>. The headings of paragraphs herein are inserted only for convenience and shall in no way define, describe or limit the scope or intent of any provisions of this Mortgage.

6. <u>Parties in Interest</u>. As and when used herein, the term "Mortgagor" shall mean and include the Mortgagor above-named and the Mortgagor's successors and permitted assigns; the term "Mortgagee" shall mean and include the Mortgagee above-named and the Mortgagee's personal representatives, successors and assigns; and the use of any gender shall include all genders.

7. <u>Applicable Laws</u>. This Mortgage shall be governed by and shall be construed and interpreted under and pursuant to the laws of the State of Hawaii. If any provision of this Mortgage is held to be invalid or unenforceable, such will not affect the validity or enforceability of the other provisions of this Mortgage.

8. <u>Notices</u>. All notices, demands or documents to be delivered under this Mortgage shall be given in writing and sent by registered or certified mail addressed to the parties at the addresses set forth at the top of this Mortgage. Such addresses may be changed by the addressee by serving notice as provided above. Service of such notice shall be deemed complete on the date of delivery or two (2) business days after the date of mailing, as applicable.

9. <u>Counterparts</u>. This Mortgage may be executed in counterparts, each of which shall be deemed an original, and said counterparts shall together constitute one and the same agreement, binding all of the parties hereto, notwithstanding all of the parties are not signatories to the original or the same counterparts. In making proof of this Mortgage, it shall not be necessary to produce or account for more than one such counterpart. For all purposes, duplicate unexecuted pages of the counterparts may be discarded and the remaining pages assembled as one document.

*[Signatures appear on next page.]*

Kai Decl. Exhibit P. 67

IN WITNESS WHEREOF, the Mortgagor and the Mortgagee have executed these presents as of the date first above written.

MORTGAGOR:               **HAWAIIAN RIVERBEND, LLC,** a Hawaii limited liability company

By _____

Michael Miroyan

Its Manager

MORTGAGEE:

_____ _TRUSTEE_

**KENNETH Y. KAI,** Trustee as aforesaid

_____ _TRUSTEE_

**TAE K. KAI,** Trustee as aforesaid

12

Kai Decl. Exhibit P. 68

# ACKNOWLEDGMENT

State of California

County of ~~SANTA CLARA~~                           )

On ~~08/07/13~~                    before me, ~~JASON HERRERA NOTARY PUBLIC~~
(insert name and title of the officer)

personally appeared **MICHAEL MIROYAN**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

JASON HERRERA
Commission # 1875494
Notary Public - California
Santa Clara County
My Comm. Expires Jan 2, 2014

13

STATE OF CALIFORNIA

COUNTY OF *Santa Clara*

On ~~May~~ *October 10, 2013* before me, *Sharon Lefountain Evans, Notary Public*
(insert name and title of the officer)

personally appeared **KENNETH Y. KAI**, Trustee as aforesaid, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

(Seal)

SHARON LA FOUNTAIN EVANS
Commission # 1927519
Notary Public - California
Santa Clara County
My Comm. Expires Mar 31, 2015

DESCRIPTION OF THE ATTACHED DOCUMENT

*Real Property Mortgage*
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages: *12 + 1*

Document Date: _____

_____
(Additional Information)

CAPACITY CLAIMED BY SIGNER
    Trustee(s)
    Attorney-in-Fact
    Other _____

ImanageDB:2346634.3

14

STATE OF CALIFORNIA

COUNTY OF _Santa Clara_

On _October 11, 2013_ before me, _Sharonla Fountain-Evans Notary Public_
(insert name and title of the officer)

personally appeared **TAE K. KAI**, Trustee as aforesaid, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____                    (Seal)

---

DESCRIPTION OF THE ATTACHED DOCUMENT

_Real Property Mortgage_
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages: _12 + 7_

Document Date: _____

_____
(Additional Information)

SHARON LA FOUNTAIN EVANS
Commission # 1927519
Notary Public - California
Santa Clara County
My Comm. Expires Mar 31, 2015

---

CAPACITY CLAIMED BY SIGNER
   Trustee(s)
   Attorney-in-Fact
   Other _____

imanageDB:2346634.3                    15

15

# DESCRIPTION

## LOT 9-C

All of that certain parcel of land being a portion of Lot 9, Waikoloa
Development, File Plan 1172, being also a portion of R. P. 5671,
L. C. Aw. 8521-B, Apana 1 to G. D. Hueu of
Waikoloa Development, situate at Waikoloa,
District of South Kohala, Island of Hawaii, Hawaii

Beginning at the southeast corner of this parcel of land, being also along the north
side of Waikoloa Road and the southwest corner of Lot 8, Waikoloa Development, File
Plan 1172, the coordinates of said point of beginning referred to Government Survey
Triangulation Station "PUU HINAI" being 8,393.08 feet North and 1,531.27 feet West
and running by azimuths measured clockwise from True South:

| | | | | | |
|---|---|---|---|---|---|
| 1. | 111° | 44' | 07" | 1280.73 | feet along the north side of Waikoloa Road; |
| 2. | 113° | 41' | 56" | 352.57 | feet along the same; |
| | | | | | Thence, along the intersection of Waikoloa Road and Paniolo Avenue on a curve to the right with a radius of 20.00 feet, the chord azimuth and distance being; |
| 3. | 157° | 32' | 49" | 27.71 | feet; |
| 4. | 201° | 23' | 42" | 304.78 | feet along Paniolo Avenue; |
| | | | | | Thence, along the same on a curve to the left with a radius of 540.00 feet, the chord azimuth and distance being; |
| 5. | 192° | 03' | 09" | 175.29 | feet; |
| 6. | 266° | 19' | 57" | 24.17 | feet along Lot 9-B; |
| | | | | | Thence, along the same on a curve to the left with a radius of 265.00 feet, the chord azimuth and distance being; |
| 7. | 254° | 55' | 34" | 104.81 | feet; |
| 8. | 243° | 31' | 12" | 102.13 | feet along the same; |

## EXHIBIT A
### Page 1 of 7

ImanageDB:2346634.3

16

|  |  |  |  |  |  | Thence, along the same on a curve to the right with a radius of 191.00 feet, the chord azimuth and distance being; |
|---|---|---|---|---|---|---|
| 9. | 267° | 37' | 40" | 156.03 | feet; |
| 10. | 291° | 44' | 07" | 164.63 | feet along the same; |
| 11. | 21° | 44' | 07" | 279.00 | feet along the same; |
| 12. | 291° | 44' | 07" | 447.84 | feet along the same; |
| 13. | 21° | 44' | 07" | 263.57 | feet along Lot 8, Waikoloa Development, File Plan 1172; |
| 14. | 291° | 44' | 07" | 755.00 | feet along the same; |
| 15. | 21° | 44' | 07" | 180.00 | feet along the same to the point of beginning and containing an area of 14.622 acres, more or less |

BEING A PORTION OF THE PREMISES ACQUIRED BY DEED

GRANTOR      :     WAIKOLOA MAUKA, LLC, a Delaware limited liability company

GRANTEE      :     HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company

DATED          :     November 23, 2009
RECORDED   :     Document No. 2009-179060

ImanageDB:2346634.3

17

TOGETHER WITH, Easement AE-1 for Access Purposes, being described as follows:

## EASEMENT AE-1
### (FOR ACCESS PURPOSES)

All of that certain easement parcel of land being a portion of
Lot 9-B, Waikoloa Development,
Waikoloa, District of South Kohala, Island of Hawaii, Hawaii

Beginning at the northeast corner of this easement parcel of land, the coordinates of said point of beginning referred to Government Survey Triangulation Station "PUU HINAI" being 9,596.53 feet North and 2,436.77 feet West and running by azimuths measured clockwise from True South:

| | | | | |
|---|---|---|---|---|
| 1. | 21° 44' 07" | 60.00 | feet; |
| 2. | 111° 44' 07" | 80.70 | feet along Lot 9-C; |
| | | | Thence, along the same on a curve to the left with a radius of 191.00 feet, the chord azimuth and distance being: |
| 3. | 87° 37' 40" | 156.03 | feet; |
| 4. | 63° 31' 12" | 102.13 | feet along the same; |
| | | | Thence, along the same on a curve to the right with a radius of 265.00 feet, the chord azimuth and distance being: |
| 5. | 74° 55' 34" | 104.81 | feet; |
| 6. | 86° 19' 57" | 24.17 | feet along the same; |
| | | | Thence, along Paniolo Avenue on a curve to the left with a radius of 540.00 feet, the chord azimuth and distance being: |
| 7. | 179° 31' 19" | 60.09 | feet; |

EXHIBIT A
Page 3 of 7

ImanageDB:2346634.3

18

| 8. | 266° | 19' | 57" | 20.83 | feet along Lot 9-A; |

Thence, along the same on a curve to the left with a radius of 205.00 feet, the chord azimuth and distance being;

| 9. | 254° | 55' | 34" | 81.08 | feet; |
| 10. | 243° | 31' | 12" | 102.13 | feet along the same; |

Thence, along the same on a curve to the right with a radius of 251.00 feet, the chord azimuth and distance being;

| 11. | 267° | 37' | 40" | 205.04 | feet; |
| 10. | 291° | 44' | 07" | 80.70 | feet along the same to the point of beginning and containing an area of 0.667 acres, more or less. |

Description Prepared By:
Engineering Partners Inc.

RONALDO B. AURELIO
Licensed Professional Land Surveyor
Certificate Number 7564
Expires April 30, 2014

Hilo, Hawaii, December 2012

SUBJECT, HOWEVER, to:

1.  Reservation in favor of the State of Hawaii of all mineral and metallic mines.

2.  DESIGNATION OF EASEMENT "E-W-1" (50 feet wide)

    PURPOSE    :    electrical, telephone and water line
    SHOWN      :    on File Plan No. 1172

3.  GRANT to WAIKOLOA WATER CO., INC., dated December 20, 1978, recorded in Liber 13374 at Page 441, as amended by instrument dated February 4, 1981, recorded in Liber 15498 at Page 103; granting an easement over said Easement "E-W-1".

4.  DESIGNATION OF EASEMENT "E-4" (75 feet wide)

    PURPOSE    :    electrical and telephone

EXHIBIT A
Page 4 of 7

ImanageDB:2346634.3

|        |       |                                    |
|--------|-------|------------------------------------|
| SHOWN  | :     | on File Plan No. 1172              |

5.   GRANT

    TO    :    HAWAII ELECTRIC LIGHT COMPANY, INC.

| DATED    | : | April 27, 1976                                                |
|----------|---|---------------------------------------------------------------|
| RECORDED | : | Liber 11411, Page 135                                         |
| GRANTING | : | an easement for utility purposes over Easement "6" described therein |

6.   GRANT

    TO    :    WAIKOLOA RESORT UTILITIES, INC. doing business as WEST HAWAII UTILITY COMPANY

| DATED    | : | February 19, 1998    |
|----------|---|----------------------|
| RECORDED | : | Document No. 98-028918 |
| GRANTING | : | an easement over only that portion of said Easement "E-W-1" affecting Lot 9 of File Plan No. 1172 |

7.   GRANT

    TO    :    WAIKOLOA WATER CO., INC. doing business as WEST HAWAII WATER COMPANY and WAIKOLOA RESORT UTILITIES, INC. doing business as WEST HAWAII UTILITY COMPANY

| DATED    | : | February 19, 1998    |
|----------|---|----------------------|
| RECORDED | : | Document No. 98-028921 |

    GRANTING    :    an easement for utility purposes over Easement "W-2" described therein

8.   GRANT

    TO    :    VERIZON HAWAII INC. now known as HAWAIIAN TELCOM, INC.

| DATED    | : | ----- (acknowledged April 22, 2003 and May 23, 2003) |
|----------|---|------------------------------------------------------|
| RECORDED | : | Document No. 2003-139270                             |
| GRANTING | : | an easement for utility purposes over Easement "1" described therein |

9.   No vehicular access and planting screen, as shown on Subdivision map 11-001060, approved November 29, 2012.

10.   Designation of Easement "AE-1"

| PURPOSE | : | Access                                              |
|---------|---|-----------------------------------------------------|
| SHOWN   | : | on Subdivision map 11-001060, approved November 29, 2012 |

11.   The terms and provisions contained in the following:

    (A)    DEED WITH COVENANTS AND RESERVATION OF EASEMENTS AND OTHER RIGHTS

EXHIBIT A

Page 5 of 7

*20*

<table>
<tr><td>DATED</td><td>:</td><td>September 20, 2005</td></tr>
<tr><td>RECORDED</td><td>:</td><td>Document No. 2005-188909</td></tr>
</table>

Certain water rights reserved in said Deed have been assigned pursuant to that certain WATER RIGHTS QUITCLAIM dated September 20, 2005, recorded as Document No. 2005-188913, by and between WAIKOLOA LAND & CATTLE CO., "Grantor", and WAIKOLOA WATER CO., INC., and WAIKOLOA RESORT UTILITIES, INC., "Grantee".

(B)     GRANT OF RIGHT TO DESIGNATE AND GRANT EASEMENTS

<table>
<tr><td>DATED</td><td>:</td><td>September 20, 2005</td></tr>
<tr><td>RECORDED</td><td>:</td><td>Document No. 2005-188911</td></tr>
<tr><td>PARTIES</td><td>:</td><td>WAIKOLOA MAUKA, LLC, "Owner", and WAIKOLOA LAND & CATTLE CO., "WDC"</td></tr>
</table>

Said Grant was amended by instrument dated November 29, 2006, recorded as Document No. 2006-220312.

12.     The terms and provisions contained in the following:

INSTRUMENT:     DECLARATION OF RESTRICTIVE COVENANTS

<table>
<tr><td>DATED</td><td>:</td><td>December 29, 2008</td></tr>
<tr><td>RECORDED</td><td>:</td><td>Document No. 2008-193975</td></tr>
</table>

13.     The terms and provisions contained in the following:

INSTRUMENT:     DISCLOSURE AGREEMENT

<table>
<tr><td>DATED</td><td>:</td><td>December 29, 2008</td></tr>
<tr><td>RECORDED</td><td>:</td><td>Document No. 2008-193976</td></tr>
<tr><td>PARTIES</td><td>:</td><td>WAIKOLOA MAUKA, LLC, a Delaware limited liability company, "WML", WQJ2008 INVESTMENT, LLC, a Washington limited liability company, "WQJ2008", UKUMEHAME QUARRY COMPANY LIMITED PARTNERSHIP, a Hawaii limited partnership, "Ukumehame", and collectively with WQJ2008, "Buyer"</td></tr>
</table>

14.     The terms and provisions contained in the following:

INSTRUMENT:     JOINT VENTURE AGREEMENT

<table>
<tr><td>DATED</td><td>:</td><td>April 29, 2010</td></tr>
<tr><td>RECORDED</td><td>:</td><td>Document No. 2010-062607</td></tr>
<tr><td>PARTIES</td><td>:</td><td>WAIKOLOA MAUKA, LLC, a Delaware limited liability company, "WM", and HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company, "HR"</td></tr>
</table>

EXHIBIT A
Page 6 of 7

21

15. Historic ceremonial and burial sites and similar matters which an archaeological study and archaeological inspection of the land would disclose.

16. Real Property Mortgage dated April 28, 2010 and recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2010-062606, as amended.

17. Any other instrument recorded prior to the recordation of this Mortgage.

**END OF EXHIBIT "A"**

ImanageDB:2346634.3

*22*

Kai Decl. Exhibit P. 78