Mike Miroyan
Box 3181
Saratoga, Ca.
95070

FILED
JAN 30 2019
CLERK
United States Bankruptcy Court
San Jose, California

BK Court N.D. Ca.
San Jose, Ca.

KAI
v.
MIROYAN
HR, LLC

case # 18-52601

objection to all papers filed by opposing counsel; motion requesting for time to get representation; Declaration of Miroyan in support.

I request **More time** to hire competent counsel. Property is worth $6M the KAIs say they are owed $1-2 and they committed **Fraud!**

1/30/19

[signature]

Case #18-52601

Declaration of Michael Miroyan re: motion for time to hire counsel stated under penalty of perjury.

Miroyan, I Am trying to stay off the sharks as they eat me to pieces without me having proper representation, nor time to represent my side of things. It was only two weeks ago that I was relieved of council and I have been unable to find other council. I also just found out that my original council, Mr. Su did not file an opposition to the New Year's Eve filing by Mr. opposing council, Wayne Silver.

I don't lie. They, the Kai's & their lawyer lie to the court!

This case involves treachery, deceit, and greed at the highest levels by the client of opposing council, The Kai Family Trust. They were members of the LLC and held the Note at the same time on a project that I invited them into, gave them 50% membership interest and the first mortgage simultaneously. Within 12 months of me doing that, they have lawyered up to stab me in the back without telling me in a breach of their fiduciary duty to me, as a fellow member of the Hawaiian River Bend, LLC. For two and a half to three years, they lied to my face and did everything they could being coached by the attorneys in the weeds from their hidden position on how to kill my project. Starting first with a breach of their membership purchase agreement, driving me into homelessness in late 2012 because of their lack of payment that they were obligated to pay me. They avoided me, they wasted my time, and they soured the project. They made an agreement and we signed the mortgage but then they would renege and then they would change their mind. Between August 7 and 8th when I signed the mortgages, I never had them notarized because we could not agree through their difficulties by design as to when they would get paid and how there was to be no foreclosure because I raised their mortgage by $650,000 without any money trail whatsoever because there was no money trail. I would be doggoned if I am going to get a foreclosure after I raised up your mortgage $650,000. They stalled me out from August to November of 2013 and when I was embroiled in trial and on the stand in San Jose, CA defending my property in the East Foothills of San Jose, they secretively, sneakily, and greasily bribed someone at the Title Guarantee and Trust office in charge of my escrow and they sent that mortgage with a fraudulent and forged notarization of my signature to the Bureau of Conveyances overnight delivery and recorded that mortgage on November 18, 2013 that I had refused to have notarized and my emails up to that day was that I had about had it with these people. I know they are playing games, they're damaging me, screwing me and I was about ready to pull the plug when they filed this fraudulent mortgage, which they expect me to answer to, and to the contrary, I expect them to answer to it. If that is not enough, they lied saying that they had not held the auction when they certainly had held the auction in utter defiance of a Federal Automatic Stay on a Chapter 13 bankruptcy because they had to get the property into their hands. They can't let the court find out what they actually have done because they probably can go to prison for it. Filing the mortgage on November 18, 2013 and eleven days later $900,000 is due. Do you think that I filed that? I never filed that, they filed that fraudulently, just like they filed the fraud papers in this courtroom. Lying to this judge and court by saying they never held the auction, when they definitely did. They have done whatever they want because Hawaii is so corrupt, they can get away with it...so far. However, I don't believe they are going to get away with when we ask them these questions here in San Jose, CA or in Hawaii. They just keep throwing money at it to steal my property, when I increased their mortgage by $650,000 because of a valid reason. So, if you rush to justice today, it's a rush to injustice. It is not justice. I deserve to have time to be able to prepare for this hearing and bring forth these things that need to be brought forth, telling the truth and the whole truth in this court of law.

I declare under penalty of perjury of the laws of the state of California & Hawaii that all of the above is true.

Miroyan 1/30/19
M Miroyan


# PACIFICCENTURYGROUP

March 23, 2006

VIA E-MAIL

Waikoloa Mauka, LLC
c/o Ms. Kee Chan
73011 Country Club Drive – Suite F-3
Rancho Mirage, CA

Re: Waikoloa Village Towncenter

Dear Kee:

Confirming our recent discussions, Pacific Century Homes Inc., or assigns (hereinafter "Buyer"), is interested in purchasing the Property (defined below) from Owner(s) (collectively, "Seller") on the following offered terms and conditions. If the terms and conditions are acceptable to Seller, please sign below where provided and this letter shall then constitute a non-binding Letter of Intent. The parties will exercise good faith efforts to negotiate and execute a definitive Purchase Agreement and Escrow Instructions ("Agreement") within 15 days following execution of this Letter of Intent.

1. **Subject Property Description:**

    Property identified as the herein listed TMK tax assessor nos. comprising approximately 804 acres located within the City of Kona, Hawaii, as follows:

    | TMK | Zoning & Acres | |
    |---|---|---|
    | 6-8-008-032 | RM 1.5 | 27.75 ac. Multi-family |
    | 6-8-003-040 | CV-10 | 23.21 ac. Commercial |
    | 6-8-003-015 | CV-10 | 15.95 ac. Commercial |
    | 6-8-003-014 | CV-10 | 4.91 ac. Commercial |
    | 6-8-003-016 | CV-10 | 1.02 ac. Commercial |

    *[handwritten annotations: "$18", "See pg. 2"]*

| | | |
|---|---|---|
| 6-8-002-016 | ~~398~~ RA-1A | 532.61 ac. Residential |
| | | 1 acre |
| 6-8-002-016 | O | <u>198.97 ac. Open</u> ← 53 |
| | TOTAL | 804.42 acres |

The legal description shall be as set forth in the preliminary title report to be reviewed and approved by Buyer.

2. **Purchase Price:**

*$100 million offer*

The aggregate purchase price shall be One Hundred Million Dollars ($100,000,000) for purchase of the land in its "as is" "where is" condition, free from tenancies, consisting of (a) $18 million for the RM 1.5 acreage, (b) $29 million for the CV-10 acreage, and (c) $53 million for the RA-1A & O acreage.

3. **Closing; Terms Of Payment:**

   a. An escrow shall be opened with a mutually agreed nationally recognized title company within three (3) days following execution of the definitive Agreement by Buyer and Seller. Upon opening of escrow, Buyer will deposit into escrow One Hundred Thousand Dollars ($250,000) fully applicable to the purchase price. Upon expiration of the Feasibility Period (defined below) without termination by Buyer, Buyer shall deposit an additional Seven Hundred Fifty Thousand Dollars ($750,000) as earnest money, and the entire deposit of One Million Dollars ($1,000,000) shall become non-refundable but shall be applicable to the purchase price due at Closing.

   b. Closing shall take place on or before September 1, 2006.

   c. The purchase price shall be payable in cash at closing, subject to credit and offset for the $1,000,000 earnest money deposit.

4. **Feasibility Period:**

Buyer shall have seventy-five (75) days from execution of the definitive Agreement to perform economic and engineering feasibility studies and environmental assessments. Prior to the expiration of the Feasibility Period, Buyer in its sole discretion will either approve or disapprove the proposed transaction.

5. **Preparation of Purchase Agreement:**

   Buyer shall prepare a draft of a definitive Purchase Agreement and Escrow Instructions for submission to Seller within ten (10) business days following execution of this Letter of Intent.

6. **Miscellaneous:**

   a. **Assignment:** Buyer shall have the right and ability to assign its rights under the Agreement to a partnership or limited liability company, provided Buyer, its principals or its affiliates, is a general partner of such partnership or a managing member of such LLC.

   b. **Confidentiality:** Buyer and Seller each agree that the existence and all terms of the proposed transaction will be kept confidential and that the Agreement will include an expanded confidentiality provision.

   c. **Right of Entry:** During the escrow period, Buyer and Buyer's agents will have the right to enter the Property after Seller's receipt of acceptable insurance certificate for any purpose in connection with Buyer's acquisition of the Property. Buyer will keep the Property free and clear of any mechanic's liens arising out of such entry.

   d. **Title:** Seller will convey good and marketable title to the Property to Buyer, free and clear of all monetary liens and other encumbrances except those specifically approved by Buyer. A Preliminary Title Report shall be delivered to Buyer for Buyer's approval within ten (10) days following execution of this Letter of Intent.

   e. **Closing Costs:** Seller shall be responsible for title premiums for a CLTA owner's policy of title insurance and for all transfer taxes. Buyer and Seller will each bear 50% of the escrow costs. Each party will bear its own legal fees and other expenses.

   f. **Broker/Finder:** Seller and Buyer shall each represent that there are no brokers or finders involved with this transaction other than Kee Chan, who shall be compensated by Seller in accordance with a separate agreement.

   g. **Seller Exchange.** Buyer agrees to cooperate should Seller elect to sell the Property as part of a like-kind exchange under IRC Section 1031. Seller's

Ms. Kee Chan
March 23, 2006
Page Four

contemplated exchange shall not impose upon Buyer any additional liability or financial obligation, and Seller agrees to hold Buyer harmless from any liability that might arise from such exchange. This Agreement is not subject to or contingent upon Seller's ability to acquire a suitable exchange property or effectuate an exchange. In the event any exchange contemplated by Seller should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

If the above terms are acceptable to Seller, please execute where indicated below and we will effect the preparation of the draft definitive Agreement consistent with the above. We appreciate your consideration.

Yours truly,

William W. Lo
Chairman and CEO


**THE ABOVE TERMS AND CONDITIONS ARE HEREBY ACKNOWLEDGED AND AGREED TO BY SELLER.**

SELLER:

By:_____          Dated:_____


By:_____          Dated:_____